73 A.3d 290

**Kenneth Martin STACHOWSKI, Jr.**

v.

**STATE of Maryland.**

**No. 2051, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Aug. 27, 2013.

2

4

Celia A. Davis (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Jeremy M. McCoy (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., EYLER, DEBORAH, S., KEHOE, JJ.*

KEHOE, J.

Kenneth Martin Stachowski, Jr. appeals his conviction by the Circuit Court for Somerset County for violating Maryland's bad check law, Md.Code (2002, 2012 Repl.Vol., § 8–103 of the Criminal Law Article ("CL")), and raises one issue:

Where a conviction is entered by a guilty plea and the sentence is imposed and suspended in favor of a probation, may a trial judge, as one of the conditions of the probation,

---

* Graeff, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8–605.1.

order that the defendant pay restitution arising from an unrelated case?

We answer this question in the negative and vacate the portion of the sentence requiring Stachowski to pay restitution.

## Background

Between 2003 and 2005, Stachowski committed a variety of criminal offenses in Somerset and Wicomico counties in Maryland as well as in Delaware. We are concerned with two strands of this larger web. The first involves Stachowski's violations of Maryland's Home Improvement Law, Md.Code (1992, 1998 Repl.Vol.), § 8–101 *et seq.* of the Business Regulations Article ("BR"); and the second relates to his passing a bad check.

In 2003 and 2004, Stachowski entered into separate written home improvement contracts with three Somerset County residents, Darlene Wright, Ruth Daniels, and Emma Daniels. He failed to perform the agreed-upon work and the aggrieved individuals filed complaints with the Maryland Home Improvement Commission. As a result, Stachowski was charged in three separate proceedings in the District Court of Maryland, sitting in Somerset County, with failing to perform home improvement contracts in violation of BR § 8–605,[1] and with acting as a contractor without a license in violation of BR § 8–601.[2] All three of these cases were resolved on March 4, 2005 in the district court.

---

1. BR § 8–605 states:

> A contractor may not:
> (1) abandon or fail to perform, without justification, a home improvement contract; or
> (2) deviate materially from plans or specifications without the consent of the owner.
>
> BR § 8–623 provides that "a person who violates this title is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both."

2. BR § 8–601 provides in pertinent part:

In the Darlene Wright case, Stachowski pleaded guilty to failing to perform a home improvement contract and the State nolle prossed the charge for acting as a contractor without a license. Stachowski received a six month suspended sentence, a $1,000 suspended fine, three years supervised probation, and was ordered to pay restitution of $2,142.85, in $250 monthly installments.

In the Ruth Daniels case, Stachowski pleaded guilty to failing to perform a home improvement contract and the State nolle prossed the charge for acting as a contractor without a license. He received a six month suspended sentence, a $1,000 suspended fine, three years supervised probation, and was ordered to pay restitution of $8,997 in monthly payments of $250.

In the Emma Daniels case, Stachowski pleaded guilty to acting as a contractor without a license and the State nolle prossed the charge for failing to perform a home improvement contract. Stachowski received a 30–day suspended sentence, a $1,000 suspended fine, three years supervised probation, and was ordered to pay restitution of $4,140 in monthly installments of $250.

Stachowski did not make the required restitution payments and, eventually, the State filed petitions to revoke his probations. After a hearing, the district court found Stachowski to be in violation of probation in all three cases and ordered Stachowski to serve the previously suspended sentences in each case and to pay fines of $1,000 in each case, to be served off at a rate of $10 per day of confinement. The sentences were to run consecutively to one another. Stachowski timely

---

(a) *Contractor.*—Except as otherwise provided in this title, a person may not act or offer to act as a contractor in the State unless the person has a contractor license.

* * *

(d) *Penalty.*—A person who violates this section is guilty of a misdemeanor and, on first conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 30 days or both and, on a second or subsequent conviction, is subject to a fine not exceeding $5,000 or imprisonment not exceeding 2 years or both.

appealed the disposition of the three violation of probation cases to the circuit court.[3] We turn now to the second strand.

In June, 2005, Stachowski gave a bad check in the amount of $182.86 to a company known as Somerset Well Drilling. Stachowski was charged in the Somerset County district court with obtaining property or services by bad check in violation of CL § 8–103.[4] Upon Stachowski's request for a jury trial, the case was transferred to the circuit court. Prior to the scheduled trial date in the circuit court, Stachowski's wife made full restitution to Somerset Well Drilling.

The two strands came together on October 11, 2006, when all four cases were called for trial in the circuit court. At the beginning of the proceeding, the State represented that the parties had reached an agreement as to the disposition of all four cases (emphasis added):

[THE STATE]: Your Honor, I believe we've worked out a plea agreement although I had not stated that on the record. My understanding of the plea agreement, your Honor, three of these are an appeal for violation of probation from District Court. I think that we're in agreement and the State would consent to the fact that Judge Hayman had imposed all of the backup time for the cases. And in addition to that he had imposed a thousand dollar fine per case and ordered that the defendant serve that off at ten dollars a day.

[W]e're in agreement that the thousand dollar fine that he would serve off at ten dollars a day was an illegal sentence.

---

**3.** The appeals of the district court's judgments were docketed in the circuit court as: Darlene Wright: K–06–8150; Ruth Daniels: K–06–8151; and Emma Daniels: K–06–8152.

**4.** CL § 8–103 provides in pertinent part:

(a) A person may not obtain property or services by issuing a check if:

(1) the person knows that there are insufficient funds with the drawee to cover the check and other outstanding checks;

(2) the person intends or believes when issuing the check that payment will be refused by the drawee on presentment; and

(3) payment of the check is refused by the drawee on presentment.

8

My understanding as part of the plea agreement the Defendant will agree to serve the suspended portion of the sentence which was six months, six months and thirty days. . . .

&ast; &ast; &ast;

[T]he Defendant has agreed to plead guilty in [the Somerset Well Drilling case] to [a] . . . single count of bad check. Your Honor, the State would recommend an active portion of five months incarceration which would be consecutive to the three other sentences as well.

&ast; &ast; &ast;

In this case the suspended portion, your Honor, we would leave up to you, but we would recommend some sort of a split sentence with an active period of incarceration.

As well, your Honor, restitution has already been paid in this case. His wife provided documentation this morning—

&ast; &ast; &ast;

*Your Honor, as well, the State is not opposed to work release for those active incarcerations as well as local time contingent on the fact that if he is granted work release that he would pay restitution to the victims in the violation of probation cases. Your Honor, he will agree to pay three hundred dollars a month that would be a hundred dollars per victim.* Your Honor, that's not going to be enough to cover all of the restitution but at least they'll be able to recover some portion of it. And then either sue him civilly or you know—

[THE COURT]: Central Collection.

[THE STATE]: Central collection or put a lien on his house or something of that nature.

[THE STATE]: And, your Honor, I believe that that would be the nature of the plea agreement.

(Emphasis added.)

As part of this agreement, the State entered a nolle prosequi on the theft charge in the Somerset Well Drilling case, and Stachowski both waived a jury trial, and pleaded guilty to the bad check offense. After the prosecuting attorney recounted

the factual basis for the guilty plea, the circuit court found Stachowski guilty of violating CL § 8–103.

As to his violation of probation appeals, Stachowski conceded that he had not made the required restitution payments but testified that he was struggling to support his family. The circuit court found by a preponderance of the evidence that Stachowski was in violation of his probation because he had failed to make the required $750 monthly restitution payments ordered by the district court.

The circuit court imposed sentences as follows:

THE COURT: All right. In [the Somerset Well case,] the sentence of the Court is the Defendant shall serve eighteen months in the Somerset County Detention Center. The Court is going to suspend all but five months of that sentence. . . .

He's placed on supervised probation for a period of five years. And I'll come back to probation in just a minute.

\* \* \*

And the sentence in . . . [the Somerset Well case] is consecutive to the last sentence to expire of all outstanding and unserved sentences.

The court then proceeded to revoke the probations in the home improvement cases and to impose consecutive sentences of six months each for the Ruth Daniels and Darlene Wright cases and thirty days for the Emma Daniels case. The court also entered orders requiring Stachowski to pay $8,152 in restitution to Ruth Daniels, $4,150 to Emma Daniels, and $2,142 to Darlene Wright. As a condition of probation in the Somerset Well case, the court ordered Stachowski "to make restitution to those three victims in the amount of three hundred dollars per month. . . ." Neither Stachowski nor his lawyer objected to the requirement to pay restitution.[5]

On November 9, 2006, Stachowski filed an application with this Court for leave to appeal in all four cases. By an order

---

5. Stachowski argues that he did in fact object to the restitution order. The transcript of the guilty plea proceeding does not support this contention. While Stachowski expressed his concerns about his ability

dated December 14, 2006, we transferred the appeals in the three violation of probation cases to the Court of Appeals. On May 24, 2007, Stachowski filed a supplement to his application for leave to appeal with this Court, which was denied on May 29, 2007, in an unreported, per curiam opinion. *See Stachowski v. State*, No.2051, Sept. Term, 2006. On June 1, 2007, Stachowski filed a motion for reconsideration.

On August 22, 2007, the Court of Appeals issued a writ of certiorari to the Circuit Court for Somerset County in the appeals involving the three home improvement cases. *Stachowski v. State*, 400 Md. 647, 929 A.2d 890 (2007). The Court subsequently dismissed the writ, holding that it could not address the legality of the circuit court's order that Stachowski pay $300 per month in restitution for the three home improvement cases because the order was imposed in the "fourth, unrelated, theft case," which was not before the Court in that proceeding. *Stachowski v. State*, 403 Md. 1, 9–10, 939 A.2d 158 (2008) (*"Stachowski I "*).

On January 11, 2008, Stachowski filed a supplement to his motion for reconsideration, which was still pending in this Court. By order dated May 28, 2008, we granted the application for leave to appeal, directing the parties to brief the following question:

> Where a conviction is entered by a guilty plea and the sentence is imposed and suspended in favor of a probation, may a trial judge, as one of the conditions of the probation, order that the defendant pay restitution arising from an unrelated case?

Stachowski filed his initial brief in this Court on July 7, 2008. On July 23, 2008, the Court of Appeals, on its own initiative, ordered that a writ of certiorari be issued to consider this case. *Stachowski v. State*, 405 Md. 348, 952 A.2d 224 (2008). After argument on the merits, and rebriefing and reargument on a jurisdictional issue, the Court dismissed the

---

to make the restitution payments and meet other financial obligations, neither he nor his counsel objected to the terms of probation.

writ on the basis that, pursuant to Md.Code (1973, 2012 Repl.Vol.), § 12–202 of the Courts and Judicial Proceedings Article ("CJP"),[6] it would have jurisdiction only after this Court "rendered a decision on the merits or the viability of the appeal or the status or rights of a party." *Stachowski v. State*, 416 Md. 276, 298, 6 A.3d 907 (2010) (*"Stachowski II "*).

Thereafter, we scheduled this case to address the question presented on its merits so that the Court of Appeals might address the significant and novel issue raised by Stachowski's appeal.

## Analysis

Stachowski argues that "where a conviction is entered by a guilty plea and the sentence is imposed and sentenced in favor of a probation, a trial judge may not, as one of the conditions of probation, order that the defendant pay restitution arising from an unrelated case." The circuit court's action in doing so in this case, Stachowski continues, rendered that condition of his probation illegal. Accordingly, he urges us to vacate the condition of probation requiring him to pay restitution. The State, and amicus curiae, the Maryland Crime Victims' Resource Center, Inc., present several arguments as to why the court did not err. Additionally, they assert that Stachowski failed to preserve his contentions for appellate review. Finally, the State contends that Stachowski's request that we vacate the restitution order while leaving the rest of the plea agreement intact, is inopportune. We will address the parties' contentions in the following order:

In Part I, we evaluate Stachowski's contention that the restitution order was not authorized by law. Resolving this

---

6. Section 12–202 provides in pertinent part:

A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:

\* \* \*

(4) Leave to appeal from a final judgment entered following a plea of guilty in a circuit court; or
(5) Leave to appeal from an order of a circuit court revoking probation.

question involves consideration of Md.Code, § 6–211 of the Criminal Procedure Article ("CP") [7] which authorizes a sentencing court to impose conditions of probation, and CP § 11–603,[8] which specifically addresses a court's authority to order restitution as part of a sentence, in the broader context of Maryland's statutory scheme for sentencing, restitution, and probation in criminal cases. We conclude that, in addition to authorizing a sentencing court to order restitution, CP § 11–603 sets limits on the exercise of that power and that the restitution order at issue was beyond the scope of the court's authority.

In Part II, we address the waiver and preservation arguments presented by the State and the Victims' Resource Center. We agree with them that Stachowski did not preserve the issue of the illegality of the restitution order for appellate review, but conclude that he can raise the issue nonetheless because the order of probation was an illegal sentence.

Finally, in Part III, we consider the State's contention that the proper disposition of this case is to vacate Stachowski's guilty plea and to remand the case for trial.

---

7. CP § 6–221. Suspension of sentence or probation after judgment.

 On entering a judgment of conviction, the court may suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper.

8. CP § 11–603. Restitution determination.

 (a) A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:
 (1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased;
 (2) as a direct result of the crime or delinquent act, the victim suffered:
 (i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses;
 (ii) direct out-of-pocket loss;
 (iii) loss of earnings; or
 (iv) expenses incurred with rehabilitation . . . .

## I. The Restitution Order

### A.

 Restitution, i.e., an order requiring a defendant to reimburse the victim of his or her crime as part of the disposition of criminal charges,

> serves at least three distinct purposes. First, it is a form of punishment for criminal conduct . . . Second, it is intended to rehabilitate the defendant. Lastly, it affords the aggrieved victim recompense for monetary loss.

*Pete v. State*, 384 Md. 47, 55, 862 A.2d 419 (2004) (quotation marks and citations omitted). Maryland's current statutory scheme is set out in Title 11, Subtitle 6 of the Criminal Procedure Article. *See Grey v. Allstate Ins. Co.*, 363 Md. 445, 450 n. 1, 769 A.2d 891 (2001).[9] A court can include an obligation to pay restitution as part of a sentence, CP § 11–603(a), or, as in the present case, as a condition of probation pursuant to CP § 2–221, which authorizes a court to "suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." *Pete*, 384 Md. at 55, 862 A.2d 419. Under either alternative, "[a]n order of restitution entered in a criminal case, even as a condition of probation, is a criminal sanction—part of the punishment for the crime." *Chaney v. State*, 397 Md. 460, 470, 918 A.2d 506 (2007); *see also Carter v. State*, 193 Md.App. 193, 209, 996 A.2d 948 (2010) ("There is no question that an order to pay restitution as a condition of probation is part of the punishment for the crime." (quotation marks and citations omitted)).

 Whether to order restitution lies with the trial court's discretion and we review the trial court's decision on the abuse of discretion standard. *Silver v. State*, 420 Md. 415, 427, 23 A.3d 867 (2011). While a sentencing court has broad

---

9. In *Grey*, 363 Md. at 451–65, 769 A.2d 891, Judge Wilner discussed in detail the history of restitution from biblical times to the present, the conceptual underpinnings of the modern law of restitution and the statutory histories of Maryland's restitution statutes.

authority to impose conditions of probation, its discretion is bounded by statutory limitations upon its authority. *See, e.g., Bailey v. State,* 355 Md. 287, 299, 734 A.2d 684 (1999) (holding that home detention as condition of probation under former Article 27 § 641 A was improper without explicit statutory authorization).[10] This principle is fully applicable when courts impose an obligation to make restitution as a condition of probation. *See, e.g., Silver v. State,* 420 Md. at 427, 23 A.3d 867; *Chaney v. State,* 397 Md. 460, 470, 918 A.2d 506 (2007). As a result, when a sentencing court exceeds the limits of its statutory authority in ordering restitution as a condition of probation, we will vacate the order as an illegal sentence. *Walczak v. State,* 302 Md. 422, 427, 433, 488 A.2d 949 (1985); *see also, Carter v. State,* 193 Md.App. at 209, 996 A.2d 948.

With these observations in mind, we turn to the centerpiece of Stachowski's appellate argument, namely that there was no statutory authority for the trial court to require him, as a condition of probation in the bad check case, to pay restitution to the victims in the three home improvement cases. Stachowski concedes that a court has the discretion to impose a requirement for restitution as a part of a sentence or as a condition of probation but asserts that any exercise of a court's discretion in this area is limited by CP § 11–603. We agree. We begin with the statute itself.

CP § 11–603 reads in pertinent part (emphasis added):

(a) A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:

(1) as a **direct result of the crime** or delinquent act, property of the victim was stolen, damaged, destroyed,

---

**10.** Former Article 27, § 641 was re-codified, without substantive change, as Section 6–221 of Maryland's Criminal Procedure Article by the Acts of 2001, chapter 10, § 1, effective October 1, 2001. *Pete v. State,* 384 Md. 47, 56 n. 10, 862 A.2d 419 (2004).

converted, or unlawfully obtained, or its value substantially decreased. . . .

The term "victim" is statutorily defined as (emphasis added):

(1) a person who suffers death, personal injury, or property damage or loss **as a direct result of a crime** or delinquent act; or

(2) if the person is deceased, the personal representative of the estate of the person.

CP § 11–601(j).

 In the context of interpreting § 11–603, the Court of Appeals stated:

The chief goal of statutory interpretation is to discover the actual intent of the legislature in enacting the statute, and the legion of cases that support this proposition need not be repeated here. In fact, all statutory interpretation begins, and usually ends, with the statutory text itself for the legislative intent of a statute primarily reveals itself through the statute's very words. A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. In short, if the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads.

*Pete v. State,* 384 Md. at 57–59, 862 A.2d 419 (quoting *Price v. State,* 378 Md. 378, 387–88, 835 A.2d 1221 (2003) (citations omitted in *Pete* )). Although the term "direct result of the crime" is not defined in Subtitle 6, "when statutory definitions are not explicitly provided, 'we determine the intended scope of the term by applying the language's natural and ordinary meaning, by considering the express and implied purpose of the statute, and by employing basic principles of common sense, the meaning these words intend to convey.'" *Goff v. State,* 387 Md. 327, 344, 875 A.2d 132 (2005) (quoting *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 444, 795 A.2d 715 (2002)).

Several decisions of the Court of Appeals have considered whether an injury or loss suffered by a specific victim is a "direct result of the crime." The landmark decision in this area is *Walczak v. State,* 302 Md. at 429–30, 488 A.2d 949.

Walczak was charged with robbing two victims at gunpoint, and agreed to plead guilty to one count of robbery with a deadly weapon if the State would nolle pros the remaining charges. At sentencing, the trial court ordered, without objection, that Walczak pay restitution to both robbery victims as a condition of probation. *Id.* at 424, 488 A.2d 949. He failed to do so and his probation was revoked. On appeal, Walczak contended that the statutory predecessor to CP § 11–603 did not authorize a trial court to order restitution to the victim of a crime of which he was not convicted, whereas the State argued that the statutory scheme provided trial courts with broad authority to order restitution as a condition of probation. *Id.* at 427, 488 A.2d 949.

The Court identified former Article 27 § 640(b) as the critical statutory provision. It read:

> ***Upon conviction for a crime*** where property of another has been stolen, converted, unlawfully obtained, or its value substantially decreased ***as a direct result of the crime,*** or where the victim suffered actual medical expenses, direct out of pocket losses, or loss of earning as ***a direct result of the crime,*** or if as a direct result of the crime, the victim incurred medical expenses that were paid by the Department of Health and Mental Hygiene or any other governmental entity, the court may order the defendant to make restitution in addition to any other penalty provided for the commission ***of the crime.*** Payment of restitution to the victim under this subsection has priority over payment of restitution to the Department or any other governmental entity.

302 Md. at 428, 488 A.2d 949 (emphasis added in *Walczak*).

The Court of Appeals stated:

> Section 640(b) provides that restitution may be ordered ***upon conviction.*** The statute repeats three times that

restitution depends on damages incurred as a direct result of the crime. It further states that restitution may be ordered "in addition to any other penalty provided for the commission of the crime." Clearly, then, restitution is punishment for the crime of which the defendant has been convicted. Restitution depends on the existence of that crime, and the statute authorizes the court to order restitution only where the court is otherwise authorized to impose punishment.

*Id.* at 429, 488 A.2d 949 (emphasis in original).

The Court of Appeals has adhered to the *Walczak* principle without significant deviation. Two illustrative cases are *Pete v. State*, 384 Md. 47, 862 A.2d 419 (2004), and *Goff v. State*, 387 Md. 327, 875 A.2d 132 (2005). Pete was charged in the same charging document with, among other offenses, second degree assault and reckless driving. The reckless driving charge arose out of an accident in which a police vehicle was damaged. The accident took place about two hours after the assault. Pete was convicted of both charges and, as a condition of probation for the second degree assault, was ordered to make restitution for the assault victim's medical bills as well as the repair bills for the police vehicle. 384 Md. at 51–53, 862 A.2d 419. On appeal, Pete argued that the order requiring him to pay restitution for the police vehicle was an illegal sentence because the damage to the vehicle was not the direct result of the assault. The Court considered the State's argument that, in a case where the defendant had caused injury to two different victims over the course of a crime spree lasting several hours, restitution would be proper for both victims:

if [the State could] obtain a conviction for a crime where restitution may be had, but is not ordered, and another conviction of a related crime, then restitution may be ordered to the appropriate victims as an appropriate sentence under the related crime.

*Id.* at 60, 862 A.2d 419.

As an alternative contention, the State argued that "any count for which a defendant is convicted under the same

charging document would be sufficient to satisfy the statutory 'direct result' test." *Id.*

The Court rejected these approaches as inconsistent with the plain meaning of § 11–603 (emphasis in original):

> The standards governing restitution as a direct penalty for the second degree assault conviction in this case require a particular type of crime, a victim, and damages *as a direct result of the crime.* We need not engage in a tort causal relationship analysis,[ ] nor weigh the persuasion quotient of an attenuated nexus between the damages to Patrolman Cheesman's police cruiser and the assault on Ms. Raickle. The General Assembly has required a direct result between the qualifying crime committed and the damages inflicted before restitution may be ordered. Any attempt by a court to craft a proximate causation, mere nexus, or single charging document substitute would be clearly contrary to the plainly-worded intent of § 11–603.

> In this case, the collision with, and resultant damage, to Patrolman Cheesman's cruiser are a direct result of Pete's reckless driving, not his assault on Ms. Raickle.

*Id.* at 60–61, 862 A.2d 419 (footnote omitted).

Finally, in *Goff,* the Court considered Goff's arguments that damages to an apartment that he caused during the course of an assault on the unit's tenant were not the "direct result" of the criminal activity leading to his conviction of second degree assault. The Court was unpersuaded:

> The natural and ordinary meaning of the term "direct result" most certainly includes the damage done to the shower in the instant case.[ ] It is clear that Mr. Goff damaged the shower during and because of the assault on Mr. Hadley. No intervening agent or occurrence caused the damage. Additionally, no time lapsed between the criminal act and the resulting damage caused.[ ] That leads us to conclude, considering the plain language of the statute, that the damage to the shower was a direct result of the

crime for which Mr. Goff was convicted.[1] Therefore, the order to pay restitution was proper.

387 Md. at 344, 875 A.2d 132 (footnotes omitted).

There is an exception to the *Walczak* rule. In *Lee v. State,* 307 Md. 74, 81, 512 A.2d 372 (1986), the Court held that a guilty plea to one charge was an acceptable basis for an order of restitution to victims of other crimes as long the defendant "expressly consent[ed], as a condition of probation, to the payment of full restitution for the [other charges]." In *Silver v. State,* 420 Md. at 430–31, 23 A.3d 867 the Court emphasized that such consent must be express, not implied. Moreover, in that opinion the Court suggested, albeit in dictum, that such a plea agreement could only include restitution for "related, though uncharged, crimes." 420 Md. at 432, 23 A.3d 867.[11]

Returning to the present case, the only fact linking the three home improvement cases to the bad check case was that Stachowski was the defendant in all of them. The losses suffered by the victims in the home improvement cases were not the result, direct or otherwise, of the bad check charge which was the basis of the suspended sentence and probation. While *Lee* recognizes that, as part of a plea agreement, a defendant may agree to pay restitution for crimes other than the one resulting in the guilty plea, the criminal charges in *Lee* arose out of the same transaction and, as noted, in *Silver,* such a plea agreement can only involve crimes related to the one which is the basis of the conviction. The authorities discussed above point to the conclusion that the circuit court in the present case was without authority to require Stachowski to pay restitution to the victims in the home improvement cases as a condition of probation for the sentence on the bad check charge. To avoid this result, the State and the Victims' Resource Center present separate arguments.

The State points to the fact that the circuit court suspended a portion of Stachowski's sentence on the bad check conviction

---

11. *Silver* was decided after the circuit court imposed sentence in the present case.

and required restitution as a condition of probation. The court's authority to do so was CP § 6–221, which authorizes a court to suspend execution of a sentence "and place the defendant on probation on the conditions that the court considers proper." Emphasizing the broad scope of discretion afforded to judges in fashioning terms of probation, the State suggests that the order to pay restitution was a proper condition of Stachowski's suspended sentence.

In *Pete*, the Court of Appeals addressed the same argument. In finding it unpersuasive, the Court noted that §§ 6–221 and 11–603 were "statutes on the same subject [and] are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or any portion, meaningless, surplusage, superfluous or nugatory." 384 Md. at 65, 862 A.2d 419 (quotation marks omitted). The Court concluded that a court order requiring a defendant to pay restitution as a term of probation under § 6–221 had to be consistent with the "explicit statutory requirements allowing restitution under limited circumstances" found in § 11–603:

> A probation order for a criminal conviction conditioned on restitution must meet the minimum requirements of: (1) a victim with property damage of the type enumerated in § 11–603, and (2) the damage to the victim be the direct result of the crime for which the defendant was convicted and for which it was directed.

*Id.* at 65, 862 A.2d 419.

### B.

The Maryland Crime Victims' Resource Center presents an alternative statutory argument. It points out that, in 2006, the General Assembly enacted, and the Governor signed into law, Senate Bill 289 which added § 11–619 to the Criminal Procedure Article. *See* 2006 Md. Laws 2232. The Center argues that this statute was passed in response to the Court of Appeals' decision in *Pete* and reflects a legislative intent to broaden the authority of sentencing courts to enter restitution orders. In the words of the Center:

Thus, notwithstanding the provisions of the Restitution Sub-
title which limited the court's ability to order restitution in
*Walczak* and *Pete,* the broad powers of the court to issue
restitution under Md.Crim. Proc. § 6–221 have been rein-
stated by the legislature and the trial courts have the
authority to order probation in this case for the restitution
owed by the defendant in the [home improvement]
cases. . . .

We do not believe that the statute supports the Center's
contention. Section 11–619 states:

(a) Subject to subsection (b) of this section, any order of
restitution made by a court shall be governed by the
provisions of this subtitle.

(b) This subtitle may not be construed to limit the authority
of a court to direct a defendant or a child found to have
committed a delinquent act to make restitution or to per-
form certain services, as specified by the court, for the
victim as an alternative means of restitution.

We first note that subsection (a) appears to codify the
Court's second holding in *Pete,* namely that, whether restitu-
tion is ordered by a court as a condition of probation through
§ 6–221 or as part of the sentence pursuant to § 11–603(a),
the provisions of Subtitle 6 apply to the order. *See Pete,* 384
Md. at 65, 862 A.2d 419. This would, of course, include § 11–
603(a).

Subsection (b) states that the provisions of Subtitle 6 are
not to be construed to limit the authority of a court to order
restitution for "the victim." As we have previously noted, the
term "victim" is statutorily defined as: "a person who suffers
death, personal injury, or property damage or loss as a direct
result of a crime. . . ." CP § 11–601(j)(1). The victim in the
bad check case was Somerset Well Drilling. Accepting the
Center's interpretation of the statute would require us to
disregard the statutory definition of "victim" and to substitute
for it something like "any victim of any crime committed by
the defendant at any time." We decline to do so. " 'We
cannot assume authority to read into the Act what the Legisla-

ture apparently deliberately left out.'" *Price v. State,* 378 Md. 378, 388, 835 A.2d 1221 (2003) (quoting *Howard Constr. Co. v. Yeager,* 184 Md. 503, 511, 41 A.2d 494 (1945)).

To get around this problem, the Center points to the statute's legislative history, which it asserts demonstrates that the General Assembly enacted § 11–619 in order to abrogate the holding of the Court of Appeals in *Pete.* We do not find this argument to be persuasive.

The legislative history consists of a sponsor's statement from Senator John Giannetti, Jr., who co-sponsored the bill on behalf of the Committee to Revise Article 27,[12] the Floor Report and the Fiscal and Policy Note. Senator Giannetti's memorandum summarizes the purpose of the bill as:

> The purpose of this bill is to clarify that court ordered restitution always falls under article 11–6 and further [to] clarify that this subtitle may not limit the authority of a court to direct a defendant or child to make restitution by performing certain services. For example, a child who vandalizes a house but is unable to make financial restitution may be ordered by a court to mow the lawn of the victim for a certain period of time.

Senator Giannetti made no mention of *Pete.* However, the Floor Report for SB 289 reads in relevant part (some formatting altered):

SHORT SUMMARY:

> This bill provides that the restitution laws of this state may not be construed to limit the authority of a court to direct a defendant or a child found to have committed a delinquent act to make restitution or to perform certain services, as

---

12. The Committee to Revise Article 27—Crimes and Punishments was established by the General Assembly's Legislative Policy Committee in 1992 "to review laws relating to crimes and punishments" and to recommend revisions thereto. The Committee ceased operations in 2008. *See* Maryland Manual Legislative Policy Committee, Maryland–Defunct Units, *available at* msa.maryland.gov/msa/mdmanual/07leg/html/com/01legpd.html.

specified by the court, for the victim as an alternative means of restitution.

The bill also provides that any order of restitution made by a court shall be governed by Title 11, Subtitle 6 of the Criminal Procedure Article.

COMMITTEE AMENDMENTS: None

CURRENT LAW:

A person who suffers personal injury or property damage or loss as a direct result of a crime or delinquent act, or, if the person is deceased, the person's personal representative is entitled to restitution to cover the victim's actual expenses, including loss of earnings. The Department of Health and Mental Hygiene or another governmental unit may also receive restitution for expenses paid in connection with the act. "Crime" means an act committed by a person in the State that is a crime under common law or the Maryland Code, except for nonjailable transportation offenses, and also includes certain local violations.

If a child is a defendant or a child respondent, a court may order the child, the child's parent, or both to pay restitution. Statute limits restitution payments for acts committed by children at $10,000 for each child's acts arising out of a single incident. This does not include any civil remedies available to the victim. A court cannot enter a restitution judgment against a parent unless the parent has been given a reasonable opportunity to be heard and present evidence.

BACKGROUND:

The Maryland Court of Appeals addressed the issue of restitution in December 2004 in the case *Pete v. State*, 384 Md. 47 [862 A.2d 419] (2005). Pete was convicted in the Circuit Court for Dorchester County of second degree assault, among other charges, and received probation in exchange for a suspended sentence. He also was convicted, under the same case number, for reckless driving for an incident occurring approximately two hours after the assault. He was fined $250 for reckless driving. During the incident underlying the reckless driving conviction, a police cruiser was damaged as a direct result of Pete stopping his

truck abruptly as the police cruiser followed it. One condition of the probation for the second degree assault included restitution to the Local Government Insurance Trust (LGIT) for damages to the police cruiser as a direct result of the reckless driving incident. Because restitution was unavailable for either the second degree assault conviction (the damage incurred by the LGIT was not a direct result of the second degree assault and the LGIT was not a victim of the assault) or the reckless driving conviction, the court held that the restitution order as a condition of probation was an illegal sentence.

The Fiscal and Policy Note for SB 289 is substantively the same as the Floor Report.[13]

In effect, the Center asks us to infer that SB 291 was intended to overturn the Court of Appeals' decisions in *Walczak* and *Pete* because the Floor Report and the Fiscal and Policy Note included a summary of the latter decision in the discussion of background information. This is too great a leap for us to make, especially in view of Senator Giannetti's memorandum and the fact that there is nothing in the legislative history that is overtly critical of the reasoning and result in *Pete*.[14] For the purposes of the present case, it is enough for us to state that the legislative history does not support the conclusion that § 11–619 was intended to, or had the effect of, authorizing sentencing courts to require as a condition of probation that defendants pay restitution to victims of crimes that are unrelated to the conviction for which probation is granted.

---

13. The Fiscal and Policy Note is available at http://mgaleg.maryland.gov/2006rs/fnotes/bil_0009/sb0289.pdf.

14. Beyond cavil, the General Assembly is capable of clearly expressing *its disapproval of specific appellate decisions.* For example, the preamble to Ch. 526, 2004 Laws of Maryland states in part:

In its recent decision of *Lewis v. Department of Natural Resources* [377 Md. 382, 437, 833 A.2d 563 (2003)], the Court of Appeals suggested that a prohibition on new development in the buffer, even when viable alternatives exist elsewhere on the parcel, may constitute a taking of property without just compensation, and the General Assembly profoundly disagrees with this suggestion....

The Victims' Resource Center raises two additional contentions. The first is that, because CP § 11–607 [15] provides that compliance with an order of restitution may be a condition of work release, the circuit court in the present case was authorized to order Stachowski to pay restitution to victims in unrelated cases. We think this is unpersuasive because the court was without authority to order Stachowski to pay restitution of the victims of the home improvement cases. CP § 11–607 does not render valid an otherwise invalid order.

Finally, the Center suggests that, because the Department of Corrections is required to aggregate Stachowski's consecutive sentences for the purposes of calculating diminution credits, Md.Code (1999, 2008 Repl.Vol.), § 11–502 of the Correctional Services Article, and payment of restitution is required for inmates on work release, CP § 11–607, Stachowski should pay restitution to the victims of all four of his convictions if allowed work release. The issue before us is whether the court erred in requiring, as a condition of probation in the bad check case, Stachowski to pay restitution to the victims of the home improvement cases. We express no opinion as to whether Stachowski would have been required to pay restitution to victims in the home improvement case if he was granted work release while serving the sentences imposed for those convictions.

## C.

We conclude that the order requiring Stachowski to pay restitution to the victims of the home improvement

---

**15.** Section 11–607 states in pertinent part;
 (a)(1) When a judgment of restitution has been entered under § 11–603 of this subtitle, compliance with the judgment of restitution:
 (i) may be a requirement in the judgment of conviction or disposition in a juvenile delinquency proceeding;
 (ii) if work release is ordered, shall be a condition of work release....
 Section 11–607(a) has been amended by Chapter 652 of the Laws of 2013, to that (a)(1)(2) will read "if work release is ordered or allowed...." The amendment is effective on October 1, 2013.

cases exceeded the circuit court's authority under CP § 6–221 and CP § 11–603. A sentence is illegal when "there is 'some illegality in the sentence itself or where no sentence should have been imposed.' " *Carter,* 193 Md.App. at 210, 996 A.2d 948 (quoting *Evans v. State,* 382 Md. 248, 278–79, 855 A.2d 291 (2004)). One example of the first sort of illegality is a sentence, or a portion of a sentence, that is "beyond the statutorily granted power of the judge to impose. . . ." *Hoile v. State,* 404 Md. 591, 621, 948 A.2d 30, *cert. denied,* 555 U.S. 884, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). An order requiring restitution when there is no statutory warrant to do so falls into this category. *Pete,* 384 Md. at 66, 862 A.2d 419; *Walczak,* 302 Md. at 433, 488 A.2d 949.

## II. Preservation and Waiver

The State and the Victims' Resource Center argue that, because Stachowski expressly agreed to pay restitution to the victims in the home improvement cases as a *quid pro quo* for the court's permission for work release during his incarceration, the restitution order was a valid one. This contention founders on the conclusions we reached in Part I, because there is nothing in the relevant statutes or case law that suggests that the court's authority to enter a judgment of restitution can be expanded by agreement of the parties. Absent such a provision, the issue of Stachowski's consent is not determinative because consent does not transform an illegal sentence into a legal one. *See, e.g., Bryant v. Howard Cnty. Dep't of Soc. Servs. ex rel. Costley,* 387 Md. 30, 42, 874 A.2d 457 (2005) ("[I]t is . . . clear that a party may not validly consent to a criminal sentence that is unlawful.") (citing *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737 (2000)).

Similarly, we do not find persuasive the State's contention that, because he did not object to the restitution order during the plea proceedings, Stachowski failed to preserve the issue for appellate review. In *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506 (2007), the Court explained that non-preservation and even consent notwithstanding, a defendant may challenge an illegal sentence at any time:

The **scope** of this privilege, allowing collateral and belated attacks on the sentence and excluding waiver as a bar to relief, is narrow, however. We have consistently defined this category of "illegal sentence" as limited to those situations in which the illegality inheres in the sentence itself; i.e., there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful.

(Citations omitted; emphasis in original.)

As we have explained, requiring Stachowski to pay restitution to the victims of the home improvement cases as a condition of probation in the bad check case was an illegal sentence. Neither § 6–221 nor § 11–603 authorize a court to order restitution to victims of unrelated criminal activity, even as part of a plea bargain. *See Silver,* 420 Md. at 432, 23 A.3d 867 ("[T]he State may request, in plea negotiations, that a criminal defendant agree to pay restitution for related, though uncharged, crimes. If the defendant freely and voluntarily agrees to pay such restitution, it is permissible...."). Accordingly, we view the restitution order as a sanction that was "not a permitted one for the conviction upon which it was imposed...." *Chaney,* 397 Md. at 466, 918 A.2d 506. Stachowski's failure to object to the requirement to pay restitution at the guilty plea proceeding does not prevent him from raising it on appeal.

### III. Disposition

As the final arrow in its appellate quiver, the State asserts that:

if this Court determines that the negotiated and accepted restitution condition of Stachowski's probation as part of his plea agreement was improper, the payment of restitution was part and parcel of the negotiated plea in the theft case and [his] remedy would be rescission of his entire negotiated plea agreement ... to face retrial and sentencing....

We disagree. *See Chaney*, 397 Md. at 473, 918 A.2d 506 (When a trial court erroneously entered an order of restitution, the proper remedy is to vacate the order but to otherwise affirm the conviction); *Holmes*, 362 Md. at 197, 763 A.2d 737 (Where a plea bargain involves an improper condition of probation, "the proper remedy is to strike the illegal condition of probation" if doing so can be reconciled with the plea bargain.). The interests of justice are better served in this case by striking the order of probation but otherwise affirming the conviction.

**THE ORDER OF THE CIRCUIT COURT FOR SOMERSET COUNTY THAT APPELLANT PAY RESTITUTION IN CASES K06008150, K06008151 AND K06008152 AS A CONDITION OF PROBATION IS VACATED. THE JUDGMENT IS OTHERWISE AFFIRMED.**

**COSTS TO BE PAID BY THE COMMISSIONERS OF SOMERSET COUNTY.**