939 A.2d 158

**Kenneth Martin STACHOWSKI, Jr.**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 2007.**

Court of Appeals of Maryland.

Jan. 9, 2008.

Celia Anderson Davis, Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for respondent.

Russell P. Butler, Johanna L. Oliver, Maryland Crime Victims' Resource Center, Inc., Upper Marlboro, amicus curiae.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

BATTAGLIA, J.

Kenneth Martin Stachowski, Jr., Petitioner, asks this Court to review the legality of an order of the Circuit Court for Somerset County requiring him to pay restitution under the Maryland Home Improvement Law [1] to three individuals who were victims in three separate criminal cases, as a condition of probation in a fourth, unrelated theft case, which is not before us. We conclude that the writ of certiorari should be dismissed.

## I. Introduction

Between October 2003 and February 2004, Petitioner entered into separate written home improvement contracts with Darlene Wright, Ruth Daniels and Emma Daniels, but later refused to perform the requested work. The aggrieved individuals filed complaints with the Maryland Home Improvement Commission, and as a result, Stachowski was separately charged three times in the District Court of Maryland, sitting in Somerset County, with failing to perform home improvement contracts in violation of Section 8–605 of the Business

---

1. The Maryland Home Improvement Law is codified at Section 8–101, *et seq.*, of the Business Regulation Article, Maryland Code (1992, 1998 Repl.Vol.). Section 8–623, the criminal penalty section, provides:

(a) *Application of section.*—This section only applies if there is no greater criminal penalty provided under this title or other applicable law.

(b) *Penalty.*—A person who violates this title is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both.

Md.Code (1992, 1998 Repl.Vol.), § 8–623 of the Business Regulation Article.

Regulation Article, Maryland Code (1992, 1998 Repl.Vol.),[2] and with acting as a contractor without a license in violation of Section 8–601 of the Business Regulation Article, Maryland Code (1992, 1998 Repl.Vol.).[3]

In the Darlene Wright case (District Court Case 4G10084), Petitioner pled guilty to failing to perform a home improvement contract, the State nolle prossed the charge for acting as a contractor without a license, and Petitioner received a six months suspended sentence, a $1,000.00 suspended fine, three years supervised probation, and was ordered to pay restitution in the amount of $2,142.85, in $250.00 monthly installments. In the Ruth Daniels case (District Court Case 2G10348), Stachowski pled guilty to failing to perform a home improvement contract, the State nolle prossed the charge for acting as a contractor without a license, and Stachowski received a six months suspended sentence, a $1,000.00 suspended fine, three years supervised probation, and was ordered to pay restitution of $8,997.00 in monthly payments of $250.00. In the Emma Daniels case (District Court Case 3G10349), Petitioner pled

---

2. Section 8–605 of the Business Regulation Article, Maryland Code (1992, 1998 Repl.Vol.), states:

A contractor may not:
(1) abandon or fail to perform, without justification, a home improvement contract; or
(2) deviate materially from plans or specifications without the consent of the owner.

3. Section 8–601 of the Business Regulation Article, Maryland Code (1992, 1998 Repl.Vol.), provides:

(a) *Contractor.*—Except as otherwise provided in this title, a person may not act or offer to act as a contractor in the State unless the person has a contractor license.
(b) *Subcontractor.*—Except as otherwise provided in this title, a person may not act or offer to act as a subcontractor in the State unless the person has a contractor license or subcontractor license.
(c) *Salesperson.*—Except as otherwise provided in this title, a person may not sell or offer to sell a home improvement in the State unless the person has a contractor license or salesperson license.
(d) *Penalty.*—A person who violates this section is guilty of a misdemeanor and, on first conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 30 days or both and, on a second or subsequent conviction, is subject to a fine not exceeding $5,000 or imprisonment not exceeding 2 years or both.

guilty to acting as a contractor without a license, the State nolle prossed the charge for failing to a perform home improvement contract, and Petitioner received a thirty days suspended sentence, a $1,000.00 suspended fine, three years supervised probation, and was ordered to pay restitution of $4,140.00 in monthly increments of $250.00.

The restitution orders were a condition of Stachowski's probation in each case; in none of them did he make the required payments. Subsequently, Judge R. Patrick Hayman of the District Court found Petitioner in violation of probation in all three cases and sentenced Stachowski to six months incarceration in the Darlene Wright case, another six months in the Ruth Daniels case, and another thirty days in the Emma Daniels case, all sentences to be served consecutively. Judge Hayman also separately imposed the $1,000.00 fine, heretofore suspended, in all three cases. Stachowski timely appealed the disposition of the three violation of probation cases to the Circuit Court.

On October 11, 2006, Petitioner pled guilty in the Circuit Court in the three violation of probation cases, now numbered Cases 8150 (the Darlene Wright case), 8151 (the Ruth Daniels case) and 8152 (the Emma Daniels case), which were consolidated for the purposes of the hearing pursuant to a motion filed by the State. Stachowski also agreed to plead guilty in an unrelated, separate matter, Case 8089 that originated in the Circuit Court, in which he was charged with theft under $500.00 in violation of Section 7–104 of the Criminal Law Article.

Pursuant to the plea agreement, Stachowski admitted guilt in Case 8089, the unrelated, separate, theft case, and was sentenced to eighteen months, with all but five months suspended, and five years probation. As part of Stachowski's probation in Case 8089, the Court ordered restitution to be paid to the victims in the home improvement contract cases. In the three violation of probation cases, the Circuit Court revoked Stachowski's probation and imposed a six months sentence in Case 8150, another six months sentence in Case

8151, and a thirty day sentence in Case 8152, all to be served consecutively. The following colloquy occurred:

> [THE STATE]: Your Honor, I believe we've worked out a plea agreement although I had not stated that on the record. My understanding of the plea agreement, your Honor, three of these are an appeal for violation of probation from District Court. I think that we're in agreement and the State would consent to the fact that Judge Hayman had imposed all of the backup time for the cases. And in addition to that he had imposed a thousand dollar fine per case and ordered that the Defendant serve that off at ten dollars a day.
>
> Your Honor, that portion that we're in agreement with is that the thousand dollar fine that he would serve off at ten dollars a day was an illegal sentence. My understanding as part of the plea agreement the Defendant will agree to serve the suspended portion of the sentence which was six months, six months and thirty days. If you need to know for each case it will take me a minute to find that out.
>
> [THE COURT]: I'll look at it in a minute. Go ahead and finish up and we'll make sure we have our numbers right.
>
> [THE STATE]: Your Honor, as well the Defendant has agreed to plead guilty in Case No. K–06–8089 to the only count, single count of bad check. Your Honor, the State would recommend an active portion of five months incarceration which would be consecutive to the three other sentences as well. Those would be six months consecutive, consecutive to six months, consecutive to thirty days.
>
> [THE COURT]: Sixty days isn't it? Did you say thirty or sixty?
>
> [THE STATE]: I believe it's thirty days, your Honor. And that's consecutive to—
>
> [COUNSEL FOR STACHOWSKI]: And that's Case No. 8152.
>
> [THE STATE]: Consecutive to five months. In this case the suspended portion, your Honor, we would leave up to

you, but we would recommend some sort of a split sentence with an active period of incarceration.

As well, your Honor, restitution has already been paid in this case. His wife provided documentation this morning—

[THE COURT]: So all restitution is paid?

[THE STATE]: In this Case No. 8089 a hundred and eighty-two dollars and fifty cents has been paid by cash to the victim.

[THE COURT]: Okay.

[THE STATE]: I just need a copy of that for the files.

Your Honor, as well, the State is not opposed to work release for those active incarcerations as well as local time contingent on the fact that if he is granted work release that he would pay restitution to the victims in the violation of probation cases. Your Honor, he will agree to pay three hundred dollars a month that would be a hundred dollars per victim. Your Honor, that's not going to be enough to cover all of the restitution but at least they'll be able to recover some portion of it. And then either sue him civilly or you know—

[THE COURT]: Central collection.

[THE STATE]: Central collection or put a lien on his house or something of that nature.

And, your Honor, I believe that that would be the nature of the nature of the plea agreement.

[COUNSEL FOR STACHOWSKI]: I would like to add that the three hundred dollars a month starts at the end of the first full calendar month he's out.

[THE STATE]: Your Honor, that would be contingent on work release.

[COUNSEL FOR STACHOWSKI]: Yeah, if he's out on work release.

[THE STATE]: Okay. I thought you meant out of jail.

[COUNSEL FOR STACHOWSKI]: He's out on work release.

[THE COURT]: Okay.

\*     \*     \*

[THE COURT]: All right. In 8089 the sentence of the Court is the Defendant shall serve eighteen months in the Somerset County Detention Center. The Court is going to suspend all but five months of that sentence. Give him credit for forty-five days time served. I'm doing it this way for ease of computation.

He's placed on supervised probation for a period of five years. And I'll come back to the probation in just a minute. In case ending 8150 I'm going to revoke his probation and impose a sentence of six months in the Somerset County Detention Center consecutive to the sentence imposed in 8089. The sentence in 8089 is consecutive to the last sentence to expire of all outstanding and unserved sentences.

So 8089 the one in which I just imposed eighteen months suspended all but five is consecutive to the last sentence to expire of all outstanding and unserved sentences. The six month sentence in 8150 is six months, I've revoked his probation, to the sentence imposed in 8089.

In 8151 I'm going to revoke his probation and impose a sentence of six months in the Somerset County Detention Center consecutive to the sentence imposed in 8150 and the sentence imposed in 8089.

In 8152 I'm going to revoke his probation and impose a sentence of thirty days in the Somerset County Detention Center consecutive to the sentence imposed in 8151, 8150 and 8089.

In all cases I'm going to waive fines, costs and fees given the amount of restitution that's due.

In 8150 the amount of restitution due is two thousand one-forty-two-eighty-five. The amount of restitution in 8151—that's to Darlene Wright two thousand one-forty-two-eighty-five. Ruth Daniels is eight thousand nine hundred and ninety-seven dollars. Restitution is ordered in both of those cases. Likewise in 8152 restitu-

tion in the amount of four thousand one hundred and fifty dollars is owed to Emma Daniels.

As a condition of his probation in 8089 he's to make restitution to those three victims in the amount of three hundred dollars per month beginning thirty days from the last—

[COUNSEL FOR STACHOWSKI]: The end of the first full calendar month.

[THE COURT]: The end of the first calendar month. He's allowed on work release.

Work release will be allowed subject to the resolution of the detainer in Delaware.

What have I forgotten other than his post trial rights?

[THE STATE]: Are you waiving the supervision fees as well?

[THE COURT]: Yes. I always do.

(emphasis added).

Petitioner filed Applications for Leave to Appeal in the three violation of probation cases and in the unrelated theft case in the Court of Special Appeals asking the intermediate appellate court to review the legality of the probation conditions imposed in the theft case, Case 8089, in which the judge ordered restitution to the three home improvement victims. Pursuant to Maryland Rule 8–132,[4] the Court of Special Appeals transferred the Applications for Leave to Appeal in the three violation of probation cases, Cases 8150, 8151 and 8152, to this Court,[5] after which Stachowski filed a Supple-

---

4.  Maryland Rule 8–132 states:

    If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action.

5.  The Order provided:

    *ORDER*

ment to Petition for Writ of Certiorari, which we granted. *Stachowski v. State*, 400 Md. 647, 929 A.2d 890 (2007). *Stachowski* posed the following question:

> Did the trial court, after finding Petitioner in violation of probation in three cases, err in ordering restitution to three victims as a condition of probation in a fourth unrelated case in which no restitution was due?

In the theft case, Case 8089, the Court of Special Appeals denied Petitioner's application for leave to appeal. Stachowski filed a motion for reconsideration and on June 28, 2007, the intermediate appellate court put a hold on the case, pending our resolution of the case *sub judice.*

## II. Discussion

The State has filed a motion to dismiss in which the State contends that Stachowski's petition for certiorari in the violation of probation cases before us should be dismissed, arguing that the issue is not "justiciable" because Petitioner's argument deals exclusively with the legality of the Circuit Court's actions in ordering restitution for the three home improvement victims as one of the conditions of probation in the unrelated theft case, which is not before this Court. Petitioner, conversely, argues that he is challenging the legality of the restitution orders in the three violation of probation cases even though they were imposed in the fourth, unrelated, theft case, and further asserts that were the issue lacking in justiciability, the "question is deserving of an answer because the same situation could arise in future cases."

---

It appears from the record in the above captioned appeal was noted to this Court improperly from a judgment of the Circuit Court for Somerset County made in the exercise of appellate jurisdiction in reviewing the decision of the District Court.

It is, therefore, this 14th day of December, 2006, by the Court of Special Appeals, on its own initiative,

ORDERED, pursuant to Maryland Rule 8–132 and Courts Article, § 12–302(a), that the above captioned appeal be and is hereby transferred to the Court of Appeals of Maryland.

The "above captioned appeal" was "VOP NO.2052," "CC # 19–K–06–8150, 51 and 52," the three violation of probation cases.

Although the State argues justiciability and Stachowski counters, in part, by arguing an exception to that policy, the doctrine itself, analytically, has no application in the present case. Rather, Stachowski's writ of certiorari must be dismissed, in accordance with our jurisprudence, because the legality of the restitution order in the theft case is not before us.

In *Nationwide Mutual Insurance Co. v. Webb*, 291 Md. 721, 436 A.2d 465 (1981), we had the opportunity to address the validity of a "consent to sue" clause in an uninsured motorist endorsement in light of the provisions of the uninsured motorist law. Two petitions for certiorari had been filed, seemingly, presenting the same legal issue. In one, brought by Anthony Franz, we held that "MAIF, having had notice of the tort action against the uninsured motorist and ample opportunity to intervene, was bound by the judgment in the tort suit." *Id.* at 743, 436 A.2d at 478. In the other, filed by William Jackson Webb, we declined to rule because the "consent to sue" clause relied upon by the insurer in the litigation, Nationwide Mutual Insurance, was not applicable to the controversy. Judge Eldridge, speaking for this Court, opined:

> If this case actually presented the same issues as *Franz,* what was said in Part I of this opinion would be dispositive. However, those issues cannot logically be reached in this case. The factual basis for Nationwide's position throughout this litigation, and the express premise of the first "question" in the certiorari petition, was that the uninsured motorist endorsement contained in Mr. Webb's policy was applicable, and that, under the terms of that endorsement, Nationwide was not bound by the outcome of the tort suit because it did not consent and because it did not receive the suit papers. However, the endorsement relied upon by Nationwide has no application to the controversy in this case.
>
> *     *     *
>
> Consequently, Nationwide cannot prevail because of the threshold issue contained in the first question presented in

its certiorari petition. There are in this case no policy clauses supporting Nationwide's position. The entire foundation for Nationwide's contention that it is not bound by the tort judgment are two clauses in endorsement number 576B: (1) the consent to sue clause; (2) the requirement that the insured forward to the insurer the pleadings in the tort action. Since these clauses have no application to this accident, Nationwide's contention must be rejected.

*Id.* at 747–48, 436 A.2d at 480–81.

Similarly, in *Haub v. Montgomery County,* 353 Md. 448, 462, 727 A.2d 369, 376 (1999), we did not address issues presented by the petitioner because we recognized that "some of the matters which have been argued by the parties are not actually presented by the facts of the case and need not be reached by us." In *Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 201–04, 707 A.2d 829, 834 (1998), we declined to rule upon an appeal from a declaratory judgment action where, as here, the issue raised by the petitioner was in another case and not the one before us.

Further, in *Insurance Commissioner v. Equitable Life Assurance Society,* 339 Md. 596, 664 A.2d 862 (1995), we were called upon to address the applicability and constitutionality of various sections of Article 48A authorizing differentials in certain insurance rates and underwriting based on gender if actuarially justified. We declined because of their inapplicability to the controversy before us:

The Insurance Commissioner's order in this case was premised entirely upon the applicability of Art. 48A, §§ 223(b)(2), 226(c)(2) and/or 234A(b), to Equitable's gender based life insurance rates. Moreover, both the Insurance Commissioner's and the circuit court's interpretation and application of Art. 49B, § 8, was based upon the presumed applicability of the more specific §§ 223(b)(2), 226(c)(2) and 234A(b). We have concluded that these three sections are inapplicable to the present controversy; thus, the Insurance Commissioner's order must be vacated in its entirety. Moreover, because of the inapplicability of these sections, both the

Insurance Commissioner and the circuit court erred in ruling on the constitutionality of the statutes. Neither an administrative agency nor a court should pass upon the [issues] which are inapplicable to the controversy before the agency or the court.

*Id.* at 634–35, 664 A.2d at 881–82.

In *St. Paul Fire and Marine Insurance Co. v. House,* 315 Md. 328, 554 A.2d 404 (1989), we were asked to resolve a question of whether an insurer had to prove actual prejudice resulting from a lack of notice or cooperation on the part of the insured in order to disclaim coverage under a "claims made" liability policy because the claim was not made while the policy was in effect. We declined to address the question, noting that that "issue is not presented on the facts of this case, however, because that issue arises only if the policy here involved is construed as the insurer contends." *Id.* at 330, 554 A.2d at 405.

Finally, in *Clea v. Mayor & City Council of Baltimore,* 312 Md. 662, 541 A.2d 1303 (1988), we declined to address a respondeat superior issue regarding the liability of the Baltimore City Police Department and its Commissioner, as state agencies, for the conduct of one of their officers because the issue was not properly before us in the case. *See also Layton v. Howard County Bd. of Appeals,* 399 Md. 36, 45 n. 6, 922 A.2d 576, 581 n. 6 (2007) ("Whether reapplication prohibitions apply when the law itself is changed is an issue not directly presented in this case and the resolution must await a case in which the issue is present.").

In all of these cases, we declined to address questions raised in the petitions for certiorari, because, for a number of reasons, the issues were not presented by the facts of the cases. In the present case, we also decline to address the question raised in the petition for certiorari because Stachowski is challenging a circuit court order requiring him to pay restitution in a case which is not before us. Thus, any resolution of the issue presented would have no effect on either Stachowski or the State; a reversal of the Circuit Court orders in the

home improvement cases, as requested by Stachowski, would have no effect on the restitution order in the theft case. As a result, we dismiss the writ of certiorari.

## WRIT OF CERTIORARI DISMISSED WITH COSTS.