State of Maryland v. Kenneth Martin Stachowski, Jr., No. 15, September Term, 2014

**CRIMINAL LAW – SENTENCING – RESTITUTION** –

A trial court has the authority to order, as a condition of probation, a defendant to pay restitution to a victim or victims of criminal activity unrelated to that crime for which the defendant is convicted and probation is ordered, when the defendant agrees voluntarily and expressly to pay the restitution as part of a valid plea agreement and the trial court has a sufficient factual basis from which to determine the victim's or victims' injury and the defendant's responsibility for it.

Circuit Court for Somerset County
Case No. 19-K-06008089
Argued: 7 October 2014

IN THE COURT OF APPEALS OF
MARYLAND

No. 15

September Term, 2014

STATE OF MARYLAND

v.

KENNETH MARTIN STACHOWSKI,
JR.

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.

Filed: November 20, 2014

We determine finally[1] under what circumstances, if any, Maryland's trial courts may order restitution as a condition of probation in a criminal case for injuries to victims of other crimes committed by the defendant that have no direct relationship to the crime for which the defendant has been convicted and the restitution ordered. The Court of Special Appeals held that imposing restitution under the circumstances of the present case violated Maryland Code (1957, 2008 Repl. Vol.), Criminal Procedure Article, §11-603 ("CP"). We shall reverse.

## I.    The Circumstances.

In 2003 and 2004, Kenneth Stachowski violated Maryland's home improvement regulations codified in Maryland Code (1957, 2008 Repl. Vol.), Business Regulation Article, §8-101 *et. seq.* ("BR"). Stachowski entered into three separate home improvement contracts with different Somerset County residents. When he failed to perform the agreed upon work, the aggrieved parties filed complaints with the Maryland Home Improvement Commission. The result was that Stachowski was charged criminally in the District Court of Maryland, sitting in Somerset County, with failing to perform home improvement contracts (in violation of BR § 8-605) and acting as a contractor without a license (in violation of BR § 8-601). As there were three contracts, three separate criminal proceedings were docketed as the units of prosecution.

---

[1] This is our third encounter with Stachowski and the questions presented here. In *Stachowski v. State*, 403 Md. 1, 939 A.2d 158 (2008), and *Stachowski v. State*, 416 Md. 276, 6 A.3d 907 (2010), we failed to reach the merits of the questions because of procedural and jurisdictional obstacles, respectively.

The charges were resolved through a plea agreement. Stachowski pleaded guilty to failing to perform a home improvement contract in two of the cases and acting as a contractor without a license in the third. The State *nolle prossed* the remaining charge in each case. The District Court imposed a suspended sentence of incarceration, a suspended fine, and supervised probation. As a condition of his probation, the District Court ordered Stachowski to pay restitution to each of the three victims. Stachowski was ordered to pay each victim $250 a month, until they were compensated for their respective losses of $2,142.85, $4,140, and $8,997.

When Stachowski failed to make his restitution payments, the State sought to revoke his probation. The District Court determined, after a hearing, that Stachowski violated his probation in each of the three cases. The Court ordered Stachowski to serve consecutively his suspended sentences of incarceration and pay a fine of $1,000 in each case, which would be "served off" at a rate of $10 per day of confinement. Stachowski appealed to the Circuit Court for Somerset County.

Meanwhile, in an unrelated case, Stachowski was charged with obtaining property or services by issuing a bad check, as well as theft. It was asserted that, in June 2005, Stachowski passed a check of $182.86, drawn on a closed account, to Somerset Well Drilling to obtain services from the company. The case was transferred by the District Court to the Circuit Court, upon Stachowski's request for a jury trial.[2]

---

[2] While the case was pending, Stachowski's spouse made full restitution to Somerset Well Drilling.

On 11 October 2006, the bad check / theft case and the three probation violation home improvement cases were called for trial in the Circuit Court. At the beginning of the proceeding, the State informed the judge that the parties had reached plea agreements to resolve the four cases and announced the terms:

> THE COURT: Is there anything I need to know about these cases before we proceed?
>
> [THE STATE]: Your Honor, I believe we've worked out a plea agreement although I had not stated that on the record. My understanding of the plea agreement, Your Honor, three of these are an appeal for violation of probation from District Court. I think that we're in agreement and the State would consent to the fact that Judge Hayman had imposed all of the backup time for the cases. And in addition to that he had imposed a thousand dollar fine per case and ordered that the Defendant serve that off at ten dollars a day.
>
> Your Honor, the portion that we're in agreement with is that the thousand dollar fine that he would serve off at ten dollars a day was an illegal sentence. My understanding as part of the plea agreement the Defendant will agree to serve the suspended portion of the sentence which was six months, six months and thirty days. If you need to know for each case it will take me a minute to find that out.
>
> THE COURT: I'll look at it in a minute. Go ahead and finish up and we'll make sure the numbers are right.
>
> [THE STATE]: Your Honor, as well the Defendant has agreed to plead guilty in [the bad check case] to the only count, single count of bad check. Your Honor, the State would recommend an active portion of five months incarceration which would be consecutive to the three other sentences as well. Those would be six months consecutive, consecutive to six months, consecutive to thirty days.
>
> ***
>
> Consecutive to five months. In this case the suspended portion, Your Honor, we would leave up to you, but we would recommend some sort of a split sentence with an active period of incarceration.

3

As well, Your Honor, restitution has already been paid in this case. His wife provided documentation this morning –

THE COURT:  So all restitution is paid?

[THE STATE]: In [the bad check case] a hundred and eighty-two dollars and fifty cents has been paid by cash to the victim.[3]

\*\*\*

Your Honor, as well, the State is not opposed to work release for those active incarcerations as well as local time contingent on the fact that if he is granted work release that he would pay restitution to the victims in the violation of probation cases. Your Honor, he will agree to pay three hundred dollars a month that would be a hundred dollars per victim. Your Honor, that's not going to be enough to cover all of the restitution but at least they'll be able to recover some portion of it. And then either sue him civilly or you know –

THE COURT: Central Collection.

[THE STATE]: Central Collection or put a lien on his house or something of that nature.
And, Your Honor, I believe that would be the nature of the plea agreement.

[DEFENSE COUNSEL]: I would like to add that the three hundred dollars a month starts at the end of the first full calendar months he's out.

[STATE]: Your Honor, that would be contingent on work release.

[DEFENSE COUNSEL]: Yeah, if he is out on work release.

Stachowski pleaded guilty to the charge of passing a bad check to Somerset Well Drilling and the State *nolle prossed* the related theft charge. When the Circuit Court turned to the

---

3

 When providing the factual basis for the guilty plea, the State asserted that the bad check passed by Stachowski to Somerset Well Drilling was for $182.86. The $0.36 difference between the amount of the bad check and the restitution paid on Stachowski's behalf appears to have been treated as immaterial.

three violation of probation cases, Stachowski pled guilty again. The judge found expressly that Stachowski's guilty pleas were valid.

For passing the bad check, the Circuit Court sentenced Stachowski to eighteen months of incarceration, with all but five months suspended, and five years of probation contingent on Stachowski making restitution payments to the victims of the three home improvement cases. For violating his probation in the home improvement cases, Stachowski was sentenced to a total of one year and thirty days incarceration. The sentences were to be served consecutively at the Somerset County Detention Center, with the sentence for writing the bad check as the last to expire of all outstanding sentences.[4] The Circuit Court approved work release, subject to Stachowski clearing up an outstanding detainer in Delaware. In short, the Circuit Court implemented the terms of the plea agreement. Neither Stachowski nor his attorney objected at the time to the requirement of restitution.[5]

In November 2006, Stachowski applied for leave to appeal the four cases to the Court of Special Appeals. The applications with regard to the three probation violation cases were transferred to this Court by order of the Court of Special Appeals. Stachowski's application for leave to appeal in the bad check case was denied by the

---

[4] In addition to the sentences for writing the bad check and the home improvement violations, Stachowski had outstanding sentences for unrelated theft and for driving with a suspended license which were to run consecutively.

[5] Stachowski expressed some concern about his ability to pay restitution in light of his other financial obligations, but agreed to the terms nonetheless.

Court of Special Appeals. He filed a motion for reconsideration with the intermediate appellate court, which motion remained pending for some time.

On 22 August 2007, we issued a writ of certiorari as to the home improvement cases to consider the same questions that are before this Court now. We dismissed, however, the writ. *Stachowski v. State*, 403 Md. 1, 939 A.2d 158 (2008) (*Stachowski* I). We held that we could not consider the lawfulness of the Circuit Court's order for restitution to the home improvement victims because it was imposed as a condition of probation in the bad check case, not the violation of probation stemming from Stachowski's home improvement charges. Thus, the issue was not before us properly at that time in the context of the home improvement cases.

Stachowski supplemented subsequently his motion for reconsideration in the bad check case that remained pending before the Court of Special Appeals. The motion was granted on 28 May 2008. The intermediate appellate court directed the parties to brief whether the trial judge had authority to require restitution for the injuries arising from the unrelated home improvement cases as a condition for probation in the bad check case.

After Stachowski filed his initial brief with the Court of Special Appeals, this Court issued a writ of certiorari, on its initiative, to consider the question. We dismissed this writ for lack of jurisdiction as well because the intermediate appellate court had not ruled on the merits of the application. *Stachowski v. State*, 416 Md. 276, 6 A.3d 907 (2010) (*Stachowski* II). On remand, the Court of Special Appeals decided Stachowski's appeal on the merits in *Stachowski v. State*, 213 Md. App. 1, 73 A.3d 290 (2013).

6

The Court of Special Appeals, interpreting the language of Maryland's restitution statute and relevant common law jurisprudence, held that the Circuit Court was without authority to condition probation in the bad check case on the payment of restitution to the victims in the home improvement cases because the latter were unrelated directly to the former, either factually or legally. The Court of Special Appeals struck the restitution requirement of Stachowski's probation, but upheld otherwise the sentence.

We issued a writ of certiorari to the Court of Special Appeals, at the behest of the State, *State v. Stachowski*, 436 Md. 327, 81 A.3d 457 (2013), to consider the following questions:

> 1. Did the Court of Special Appeals err in holding that a court may not order restitution as part of a plea agreement on a charge as a condition of a probation in another matter before the court, creating uncertainty in conflict with this Court's holdings in *Walczak* and *Lee?*

> 2. Did the Court of Special Appeals err in vacating only the negotiated and accepted restitution condition required of Stachowski, which was part of the plea agreement, rather than rescinding the entire plea agreement, thus allowing Stachowski the full benefit of his bargain with the State without assuming any of his negotiated burden?

## II.    Third Time a Charm.

*A. Maryland's Restitution Scheme.*

Restitution may be ordered as part of a sentence, according to CP § 11-603(a), or as condition of probation, according to CP § 2-221. *Pete v. State*, 384 Md. 47, 55, 862 A.2d 419, 423 (2004). In both instances,

7

restitution is a criminal sanction, not a civil remedy. *Grey v. Allstate Ins. Co.*, 363 Md. 445, 451, 769 A.2d 891, 895 (2001). Although restitution serves to recompense the victim, it aims also to punish and rehabilitate the criminal. *Pete*, 384 Md. at 55, 862 A.2d at 423.

A trial court may order restitution, in the sound exercise of its discretion, when, "as a *direct result* of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased. . . ." CP § 11-603(a)(1) (emphasis added).[6] Medical and funeral expenses, direct out-of-pocket loss, loss of earnings, and certain government expenses may provide the basis for restitution. *See* CP § 11-603(a). The term "victim" is defined as "a person who suffered death, personal injury, or property damage or loss as a direct result of a crime or delinquent act; or, if the person is deceased, the personal representative the estate of the person." CP § 11-601(j).

Determining whether an injury is a "direct result" of the criminal conduct is central traditionally to mapping the outer limits of a trial court's discretion in ordering restitution in most cases. Our cases are clear that restitution may be compelled only where the injury results from the actions that made the defendant's conduct criminal. *See Goff v. State*, 387 Md. 327,

---

[6] Whether restitution is ordered as condition of probation or as a sentence, the trial court's order must meet the "direct result" requirement of Maryland Code (1957, 2008 Repl. Vol.), Criminal Procedure Article, § 11-603. *Silver v. State*, 420 Md. 415 n.16, 427, 23 A.3d 867, 874 (2011); *see also Pete v. State*, 384 Md. 47, 65-66, 862 A.2d 419, 429-30 (2004).

344, 875 A.2d 132, 142 (2005) (finding that the defendant's conduct was a direct result of the injury for which restitution was ordered because the property damage was caused "during and because of" the crime, without any intervening cause); *Pete*, 384 Md. at 60-61, 862 A.2d at 426-27 (rejecting proximate causation, mere nexus, or single charging document theories of defining the direct result of the crime and, instead, requiring "a direct result between the qualifying crime committed and the damages inflicted" in order for restitution to authorized). Further, as we announced in *Walczak v. State*, restitution may be compelled ordinarily only for the criminal conduct for which the defendant was convicted. 302 Md. 422, 429, 488 A.2d 949, 952 (1985).

We acknowledged a narrow exception to these principles in *Lee v. State*. 307 Md. 74, 512 A.2d 372 (1986).[7] Lee was charged in the Circuit

---

[7] The pertinent statute in effect when we decided *Lee v. State* was the same essentially as the current statute:

> On conviction of a crime, the court may order the defendant to make restitution in addition to any other penalty for the commission of the crime, if:
> (i) Property of the victim was stolen, converted, unlawfully obtained, or its value substantially decreased as a direct result of the crime;
> (ii) The victim suffered actual medical expenses, direct out-of-pocket losses, or loss of earnings as a direct result of the crime;
> (iii) The victim incurred medical expenses that were paid for by the Department of Health and Mental Hygiene or any other governmental entity; or
> (iv) A governmental entity incurred expenses in the removal, towing, transporting, preserving, storage, sale, or destruction of an abandoned vehicle.

Court for Montgomery County with forging a check and theft. *Id.*, 307 Md. at 76, 512 A.2d at 373. Pursuant to a plea agreement, he pleaded guilty to a single count of forgery. The State *nolle prossed* the theft count. *Id.* As part of the agreement, Lee admitted to the facts underlying the theft charge and told the Circuit Court that he wanted to make restitution for the theft. *Id.* The trial judge sentenced Lee for the forgery conviction to seven years of incarceration, with all but six months suspended, upon the expiration of which the defendant would be placed on probation for three years. *Id.* Lee signed an order of probation in which he agreed to pay restitution in the amount of the loss charged in the theft count. *Id.*

Lee failed to pay the restitution as required. The State filed a petition to revoke his probation. At the probation revocation hearing, Lee argued that the court lacked authority to order restitution for theft because he had not been convicted of that charge. The Circuit Court reviewed the terms of the plea agreement, noting that Lee had agreed expressly to make restitution to the victims of the *nolle prossed* theft charge, and revoked the probation. *Id.*, 307 Md. at 76-77, 512 A.2d at 373. The Court of Special Appeals affirmed, in a reported opinion, the judgment of the Circuit Court. *Lee v. State*, 65 Md. App. 149, 499 A.2d 969 (1985).

---

Maryland Code (1957, 1982 Rep. Vol., 1986 Cum. Supp.), Article 27, § 640(b)(1). The statute authorized directing payment of restitution to the victims of crime, government entity that suffered loss, and third party payors (including insurers). *See* Art. 27, § 640 (b)(2). The prior iteration of Maryland's restitution statute, the version at issue in *Walczak v. State*, was also essentially the same. *Lee v. State*, 307 Md. 74, 78, 512 A.2d 372, 374 (1986).

On certiorari, we held that a trial court has the authority, under these circumstances, to order restitution for charged crimes for which no conviction ensued, if it is ordered as the result of a plea agreement as to the crime for which a conviction was entered. *See id.*, 307 Md. at 81, 512 A.2d at 376. Like the Court of Special Appeals, we found that this exception was contemplated by *Walczak*. *Id.* (citing *Walczak*, 302 Md. at 426 n.1, 488 A.2d 949).

In *Silver v. State*, we clarified that, for the exception in *Lee* to apply, the defendant must agree expressly to pay restitution as part of the plea bargain.[8] 420 Md. 415, 432, 23 A.3d 867, 877 (2011). In *Silver*, the defendants, a husband and wife, were each charged with three counts of animal cruelty for neglecting three horses. *Id.*, 420 Md. at 424, 23 A.3d at 874. Pursuant to a plea agreement, the defendants each pleaded guilty to one charge of animal cruelty for their treatment of the euthanized horse. The State *nolle prossed* the two remaining counts against each defendant which charged them with mistreatment of the surviving horses. *Id.* After hearing a stipulated statement of facts, the District Court judge sentenced the defendants to six days imprisonment, to be served over three weekends, and ordered restitution to the veterinarians who euthanized the one horse and provided rehabilitation for the other two. *Id.*, 420 Md. at 424-25, n.6, 23

---

[8] *Silver v. State* was interpreting the current iteration of Maryland's restitution statute. *See* 420 Md. 415, 427 n.15, 23 A.3d 867, 873 (2011).

11

A.3d at 874. The Circuit Court, on appeal, also ordered restitution for the care given the three horses. *Id.*, 420 Md. at 426, 23 A.3d at 873.

We vacated the judgment that ordered the defendants to pay restitution for the rehabilitation of the surviving horses. *Id.*, 420 Md. at 437, 23 A.3d at 880. The determinative factor in *Silver* was that, unlike in *Lee*, the defendants had not agreed expressly to pay restitution for the fall-out of the *nolle prossed* charges as part of the valid plea agreement.[9] *See id*, 420 Md. at 432, 23 A.3d at 876-77.

## B. The Circuit Court Was Authorized to Condition Stachowski's Probation in the Bad Check Conviction on the Payment of Restitution to the Victims in the Home Improvement Cases.

In the instant case, Stachowski agreed voluntarily and expressly to pay restitution to the victims in his home improvement fraud cases as a condition of probation entered on his bad check conviction.[10] The

---

[9] A defendant need not agree expressly to pay restitution of a specified amount for a trial court to order restitution for crimes other than the one or ones representing the conviction for which probation is entered. In *Lee*, we found valid an order of restitution where the defendant agreed "to make restitution in the full amount" for the *nolle prossed* charges as part of a plea agreement. 307 Md. at 81, 512 A.2d at 376.

[10] Stachowski argues to us that he did not agree voluntarily to make restitution to the victims of the home improvement cases because he was incarcerated at the time restitution was ordered and was in a difficult financial situation. Although there was clear incentive for Stachowski to accept a plea agreement—namely, to limit incarceration and provide support for his family through work release—these pressures do not diminish the knowing and voluntary nature of his plea. Stachowski indicated on the record that he understood the nature of the charges and had discussed them with his attorney. Further, the trial judge questioned Stachowski regarding his understanding of the ramifications of his plea. Such circumstances, absent other indications negating voluntariness, are strong evidence that the plea was knowing and voluntary. *State v. Daughtry*, 419 Md. 35, 75, 18 A.3d 60, 84 (2011).

12

agreement was announced to the Circuit Court judge and acknowledged as correct by Stachowski's attorney. In exchange for the State (1) not prosecuting the theft charge, (2) recommending a sentence of five months incarceration for the bad check case, and (3) suggesting work release, Stachowski agreed to plead guilty to the bad check charge and pay restitution to the victims of his fraudulent home improvement scheme. There were respective *quid pro quos* for what Stachowski and the State agreed to (and the Court implemented) that fell squarely within the narrow exception announced in *Lee*.

The Court of Special Appeals, in reaching the opposite conclusion, focused on dicta in *Silver* that it construed as suggesting that the *Lee* exception applies only when the other charges or crimes for which restitution is ordered are related to the crime for which the defendant was convicted and probation entered. The relevant language of *Silver* states: "[a]s *Walzcak* and *Lee* have long since established, the State may request, in plea negotiations, that a criminal defendant agree to pay restitution for *related, though uncharged, crimes*." 420 Md. at 432, 23 A.3d at 876-77 (emphasis added). Although, as a matter of formal logic, this statement does not frustrate the State from requesting restitution for unrelated crimes, oftentimes, in typical usage, the express mention of one thing is the exclusion of the other. Thus, the intermediate appellate court's view is not without basis.

13

We make clear here, therefore, that the *Lee* exception is not limited only to related charges or crimes. Our analysis in *Walzack* and *Lee* did not turn on whether the crimes were related and neither case mentioned relatedness when discussing the authority of a trial judge to order restitution for crimes for which the defendant was not convicted, but agreed nonetheless to make restitution. The allowance of restitution for other criminal conduct as the result of a plea bargain is just as rational for unrelated crimes as related crimes, provided a defendant gives his or her voluntary and express agreement to the restitution. As *U.S. v. McLaughlin*, a case we relied upon in *Lee*, noted:

> First, plea-bargaining in situations involving multicount indictments would be severely restricted. If a defendant could not consent to make restitution for the actual loss caused by his or her conduct relating to the indictment, and have such be a condition of any probation he or she might receive, then the government would have little reason to dismiss indictment counts in order to limit a defendant's potential period of incarceration. More importantly, however, it would frustrate the rehabilitation goals of the probation system. . . . To permit a defendant who freely admits his or her guilt, and the amount of loss caused thereby, to avoid making the aggrieved party at least economically whole is intolerable from a societal perspective.

512 F. Supp. 907, 912 (D. Md. 1981) (quoted in *Lee*, 307 Md. at 80-81, 512 A.2d at 375). Plea agreements are useful equally to realize the punitive, rehabilitative, and compensatory goals of Maryland's restitution statute in the context of unrelated crimes. Enforcing the reasonable expectations of the parties to plea agreements benefits defendants, the State, and victims. The Maryland General Assembly did not aim to limit

14

the State's use of plea agreements to resolve efficiently cases involving multiple, unrelated charged crimes pursuant to CP § 11-603(a), or its statutory predecessor that was at issue in *Lee*.

Other jurisdictions with restitution regulatory regimes similar to Maryland's do not require the other criminal conduct, for which restitution is ordered, to be related to the conviction associated with the probation in order for trial courts to impose restitution, provided the defendant consents to it through a valid plea agreement. *See, e.g.*, 18 U.S.C. § 3663 (authorizing in federal courts restitution to persons other than the victim of an offense, if agreed to by the parties in a plea agreement); *Ex parte Killough*, 434 So. 2d 852, 853 (Ala. 1983); *Kimbrell v. State*, 666 P.2d 454, 455 (Alaska Ct. App. 1983); *People v. Quinonez*, 735 P.2d 159, 164 (Colo. 1987); *Barnes v. State*, 489 So. 2d 1182, 1183 (Fla. Dist. Ct. App. 1986); *State v. Dorsey*, 889 P.2d 93, 96 (Idaho Ct. App. 1995) (discussing an Idaho statute authorizing restitution for crimes not before the court, if with consent of the parties); *People v. McClard*, 834 N.E.2d 984, 985 (Ill. App. Ct. 2005) (discussing Illinois statute authorizing restitution for losses arising from dismissed charges, if agreed to as part of a plea agreement); *Kinkead v. State*, 791 N.E.2d 243, 246 (Ind. Ct. App. 2003); *State v. Hymer*, 26 P.3d 63, 68 (Kan. 2001) (implying restitution that was ordered in a case decided previously could have been imposed as a condition of probation, if part of a plea agreement); *Commonwealth v. Morseman*, 379 S.W.3d 144, 152 (Ky. 2012) (considering Maryland's restitution regime as persuasive authority in its holding); *State v. Stephenson*, 706 So. 2d 604, 608-09 (La. Ct. App. 1998); *State v. LaCasce*, 512 A.2d 312, 316 (Me. 1986); *State v. Kennedy*, 327 N.W.2d 3, 4-5 (Minn.

1982); *Sims v. State*, 134 So. 3d 300, 303-04 (Miss. 2014); *State v. Blanchard*, 889 P.2d 1180, 1183 (Mont. 1995); *State v. McMann*, 541 N.W.2d 418, 422 (Neb. Ct. App. 1995) (discussing the Nebraska statute authorizing restitution for uncharged crimes and crimes dismissed, with the parties' consent, pursuant to a plea agreement); *Erickson v. State*, 821 P.2d 1042, 1042-43 (Nev. 1991); *State v. Steinolfson*, 483 N.W.2d 182, 185 (N.D. 1992); *State v. Carson*, 243 P.3d 73, 75 (Or. Ct. App. 2010); *Martin v. State*, 874 S.W.2d 674, 680 n. 16 (Tex. Crim. App. 1994); *State v. Bickley*, 60 P.3d 582, 584 (Utah Ct. App. 2002) (discussing Utah's statute authorizing the trial court to order restitution for conduct which the defendant agreed to make restitution as part of a plea agreement); *State v. Gorton*, 90 A.3d 901, 905 (Vt. 2014) (discussing Vermont's statute authorizing the trial court to order restitution when the defendant, knowingly and voluntarily, accepts it as part of a plea agreement);  *State v. Kinneman*, 119 P.3d 350, 357 (Wash. 2005); *Graham v. State*, 261 P.3d 239, 242 (Wyo. 2011).

Our reference to "related cases" in *Silver* does not erode the plea agreement exception described in *Walzack* and *Lee*, which mirrors, as noted above, the rule in many of our sister states and the Federal courts. Rather, *Silver* recognized merely that, as was the case in *Lee*, plea agreements including restitution for uncharged crimes or convictions will often involve related charges.[11]

---

[11]

 Even in the context of a plea agreement, the amount of restitution the defendant agrees to pay the victim of the uncharged crimes must be certain and there must be no factual dispute that the defendant's criminal conduct caused or was responsible for the aggrieved party's loss. *See Lee*, 307 Md. at 80, 82, 512 A.2d at 375, 376 (1986). In Stachowski's case, the previous convictions supplied the factual basis for the amount of restitution ordered and Stachowski's responsibility for it.

*C. We Decline to Abrogate Lee.*

In the end, Stachowski asks us to revisit *Lee*, pointing to alternative interpretations of CP § 11-603(a) and invoking the noted ambiguous dicta from *Silver*. He points particularly to the statutory requirement that restitution ordered be the "direct result" of the crime. Before engaging Stachowski's arguments, we pause to reflect on the implications of the doctrine of stare decisis.

The crux of the doctrine of stare decisis is that courts should reaffirm, follow, and apply ordinarily the published decisional holdings of our appellate courts even though, if afforded a blank slate, the court might decide the matter differently. *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 689, 69 A.3d 1149, 1154-55 (2013). The doctrine of stare decisis encourages the consistent development of legal principles, public reliance on our judicial decisions, and the perceived integrity of the courts. *Livesay v. Baltimore Cnty.*, 384 Md. 1, 14, 862 A.2d 33, 40 (2004).

Our devotion to stare decisis, however, is not absolute. We may decline to follow the doctrine when persuaded the prior decision is clearly wrong, *Townsend v. Bethlehem-Fairfield Shipyard*, 186 Md. 406, 417, 47 A.2d 365, 370 (1946), or when the precedent has been rendered archaic and inapplicable to modern society through the passage of time and evolving events, H*arrison v. Montgomery Cnty. Bd. of Educ.*, 295 Md. 442, 459-60, 456 A.2d 894, 903 (1983). Neither of these "outs" release us from honoring *Lee* in the present case.

As noted above, allowing a defendant to consent to pay restitution for his or her other crimes in addition to the crime for which he or she stands convicted, as the result of

a plea agreement, is consistent with the goals and purposes of Maryland's restitution statute. The General Assembly contemplated restitution to serve compensatory, rehabilitative, and punitive goals. *Pete*, 384 Md. at 55, 862 A.2d at 423. If courts could not order a defendant who admits freely to wrongdoing and accepts the responsibility to pay restitution as part of a plea agreement, prosecutors would have less incentive to refrain from prosecuting to the fullest all charges and seeking the maximum allowable sentence. Contrary to the goals of the statute, the reading of CP § 11-603(a) urged by Stachowski would limit compensation of the victim and the commencement of the voluntary rehabilitation of the defendant. There was, and remains, strong support for our interpretation in *Lee* of Maryland's restitution statute.

The *Lee* approach is accepted widely, as noted *supra* at 14-16. Thus, *Lee* is not an aberration or an outlier from a bygone era inapplicable to modern society[12]: several states and the Federal courts, as noted earlier, follow a similar rule.[13] Further, the Maryland

_____

[12]

 Indeed, this line of reasoning continues to gain new adherents. In 2012, the Supreme Court of Kentucky considered for the first time whether a trial court could order restitution for crimes for which the defendant had not been convicted if the defendant agreed to restitution pursuant to a plea agreement. *Commonwealth. v. Morseman*, 379 S.W.3d 144 (Ky. 2012). The Court noted that the Kentucky restitution statutes, strictly construed, would only allow a court to order restitution for crimes for which the defendant had been convicted. *Id.* at 148-49. After considering, however, the nature and aims of the statute and the interpretation of similar statutes by the courts of other states, including Maryland, the Kentucky Court held "that a trial court is authorized to order restitution for damages not suffered as a direct result of the criminal act(s) for which the defendant has been convicted when, as part of a plea agreement, the defendant freely and voluntarily agrees to the restitution condition." *Id.* at 152.

[13]

 The U.S. Supreme Court interpreted narrowly the federal statute authorizing restitution in *Hugey v. U. S.*, 495 U.S. 411 (1990). The Supreme Court held that the relevant federal statute did not authorize the federal courts to order restitution for crimes for which the defendant had

18

General Assembly, in the twenty-eight years since *Lee*, not only has failed to abrogate *Lee*, but also has broadened the scope of restitution. *See* 2006 Md. Laws Ch. 428 (adding to courts' authority to order restitution the performance of services); 2006 Md. Laws Ch. 429 (broadening the class of persons and entities to which a court may order criminal restitution paid).

We stand by our decision in *Lee*.

## III. CONCLUSION

Under *Walzack*, *Lee,* and *Silver*, the Circuit Court for Somerset County had authority to condition Stachowski's probation on the bad check conviction on his payment of restitution to the victims of his home improvement fraud. Stachowski agreed voluntarily and expressly to pay restitution to the victims of his home improvement fraud in exchange for the State's agreement to: (1) refrain from prosecuting the theft count in the bad check case; (2) recommend that Stachowski be allowed work release; and (3) encourage the court to impose a sentence of incarceration less than the maximum allowable. It was clear on this record that the ordered restitution was attributed properly to Stachowski in the proper amount.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS**

---

not been convicted, even if the defendant consented expressly to pay the restitution as part of a plea agreement. *Id.* at 413, 422. That same year, however, Congress responded to *Hugey* by passing the Crime Control Act of 1990, which broadened the class of "victims" under the federal restitution statute and allowed courts to order restitution "'to the extent agreed to by the parties in a plea agreement.'" *U.S. v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) (quoting 18 U.S.C. § 3663(a)(3)).

**TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR Somerset County. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

20