*In re: Tyrell A.*, No. 49, September Term, 2014

**JUVENILE PROCEEDINGS – SENTENCING – RESTITUTION – CO-PARTICIPANT IN CRIMINAL ACTIVITY NOT ELIGIBLE ORDINARILY**

A trial court does not have the authority generally to order, as a condition of probation, a juvenile respondent to pay restitution to a voluntary and willing co-participant in the delinquent conduct for which the respondent is found delinquent, absent exceptional circumstances.

Circuit Court for Montgomery County
Case No. 06-J-12-268
Argued: 9 February 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 49

September Term, 2014

IN RE: TYRELL A.

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.

Filed: March 30, 2015

"The first rule of Fight Club is: You do not talk about Fight Club."—*Fight Club* (Fox 2000 Pictures, Regency Enterprises, Linson Films 1999).

In this case, at the very least, the first rule of Fight Club was violated apparently. Two high school students, both of whom were minors at the time of the underlying pugilistic display, engaged in a fist-fight. Their verbal argument that commenced in front of their school came to blows behind the school. The pre-fight publicity attracted an audience, causing a disturbance in scholastic activities. In the course of the fight, one of the combatants, Dylan P., suffered a broken nose and damaged sinuses.

In a subsequent juvenile proceeding, Tyrell A. ("Petitioner"), the nominal victor of the main event, was found by the Circuit Court for Montgomery County, sitting as a juvenile court, to have been involved in the common law offense of affray.[1] For purposes of determining Petitioner's involvement, the Court found Dylan P. to be also a participant in the affray; however, he was not charged with any delinquent act arising from the fight.

The Circuit Court placed Petitioner on probation. One of the conditions of his probation required him to pay restitution for a portion of the medical expenses incurred by Dylan P. for treatment of his injuries suffered during the affray. We consider here

---

[1] The common law crime of affray is committed when mutual combatants cause fear and disruption to the public. *Hickman v. State*, 193 Md. App. 238, 248, 996 A.2d 974, 980 (2010) (citing 2A C.J.S. *Affray*, §1). One of the principal differences between affray and common law assault and/or battery is that the victim of an affray is deemed to be the public, rather than an individual. *Hickman*, 193 Md. App. at 252-53; 996 A.3d at 982. Presumably, an assault or battery may become subsequently an affray or an affray may "morph" into an assault or battery.

whether the Circuit Court had discretion, under Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article, §§ 11-603, 11-222 ("CP"), to order restitution, under the circumstances, to a voluntary co-participant in the delinquent act of affray for which Petitioner was found involved.

FACTUAL AND PROCEDURAL BACKGROUND

On 11 April 2012, the State's Attorney for Montgomery County filed a juvenile petition alleging that Petitioner was a delinquent child who committed second degree assault and affray. A merits hearing was held on 14 June 2012. Petitioner and the State reached a plea agreement in which Petitioner admitted involvement in the alleged affray and the State withdrew the charge of second degree assault.

The Circuit Court for Montgomery County, sitting as a juvenile court, informed Petitioner of his trial rights and, satisfied that he understood the impact of his admission and was admitting freely and voluntarily to the affray, accepted Petitioner's admission. The State then offered the following predicate facts in support of Petitioner's admission:

> On January 13, 2012, at Blake High School [Tyrell A.] and [Dylan P.] were arguing in front of the high school. [Tyrell A.] challenged [Dylan P.] to a fight out behind the school wherein [Tyrell A.] punched [Dylan P.] in the face two times, breaking his nose and damaging his sinuses. This fight caused a disturbance of school operations and its students and all events occurred in Montgomery County, Maryland.

Petitioner accepted the State's proffer, adding only that "[Tyrell A.] didn't invite [Dylan P.] to the rear of the school. [Dylan P.] did go to the rear of the school and that's where the affray occurred." On this information, the juvenile judge determined that Petitioner committed the offense of affray. After inquiring as to the cause of the argument

2

that led to the two-punch knockout—money for a bus fare, according to Petitioner—the judge placed Petitioner on probation.[2]

The terms of Petitioner's probation required that he observe a curfew and other rules set by his parents, continue with outpatient drug treatment, and participate in an education assessment and any directed family-based services. The State also sought restitution to be paid to Dylan P. for his medical expenses resulting from his injuries sustained in the affray. A restitution hearing was scheduled for a later date so that Petitioner's counsel could prepare Petitioner's defense.

On 19 July 2012, the juvenile court held a restitution hearing. Petitioner, through his attorney, argued that restitution was not appropriate because Dylan P. was not the victim of the affray, but rather a co-participant who was involved equally in the delinquent conduct. The State, pointing to the language of the restitution statutes, argued that the statutory text did not prohibit restitution to co-participants of criminal or delinquent conduct and, therefore, the Court had discretion to order restitution.

The Circuit Court amended Petitioner's probation to require Petitioner's payment of $299.76 to Dylan P. as partial restitution for Dylan P.'s medical expenses. This sum was half of the amount sought by the State. According to the judge, because both Petitioner and Dylan P. were participants in the affray, and therefore Dylan P. was as responsible for his injuries as Petitioner, it was not appropriate for Petitioner to pay the

---

[2] Petitioner was on probation already for an unrelated earlier offense. The juvenile judge modified the previous probation order.

full amount of the medical expenses. Petitioner appealed to the Court of Special Appeals the restitution requirement of his probation.

In an unreported opinion, a divided panel of the intermediate appellate court affirmed the Circuit Court's order of restitution. The majority relied on the text of CP § 11-601(j) defining "victim" for purposes of CP §11-603. Judge Irma Raker (specially assigned) authored a dissenting opinion, focusing rather on the ordinary usage of "victim" within the criminal law and concluding that Dylan P. was not a victim within the ambit of the statute.

Petitioner sought our review of the restitution requirement as a condition of his probation. We issued a writ of certiorari, *In re: Tyrell A.*, 439 Md. 327, 96 A.3d 143 (2014), to consider the following questions:

> 1) Does the term "victim," defined in Md. Code (2001, 2008 Repl. Vol) Criminal Procedure Art., §§ 11-601(j) and 11-603(a), as "a person who suffers death, personal injury, or property damage or loss as a direct result of a crime or delinquent act," include an individual who sustains personal injury while voluntarily participating in the crime or delinquent act?
>
> 2) Is an individual who sustains personal injury while voluntarily participating in the common law offense of affray a "victim" within the meaning of §§ 11-601(j) and 11-603(a)?
>
> 3) Should the definition of "victim" in §§ 11-601(j) and 11-603(a) be given a different interpretation in juvenile delinquency cases than in criminal cases?[3]

---

[3] Both Petitioner and the State agree that "victim," as used in Maryland's statutory restitution regime, should be interpreted synonymously for criminal and delinquency

(Continued…)

4)	Did the trial court lack authority to order Petitioner to make restitution in this case?

## DISCUSSION

A trial court has discretion to order restitution when, "as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased . . . ." CP § 11-603(a)(1). Restitution may be ordered for medical and funeral expenses, direct out-of-pocket losses, loss of earnings, and certain government expenses. *See* CP § 11-603(a). "Victim" is defined as: "(1) a person who suffered death, personal injury, or property damage or loss as a direct result of a crime or delinquent act; or, (2) if the person is deceased, the personal representative the estate of the person." CP § 11-601(j). The present case turns on whether a person who was a voluntary co-participant in the crime or delinquent act may be deemed a "victim" under CP § 11-601(j).

When interpreting statutes, we seek to ascertain and implement the intent of the Legislature. *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580, 103 A.3d 658, 663 (2014); *Johnson v. Mayor & City Council of Baltimore City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). We look first to the text of the statute. "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends

---

(…continued)
cases. The Court of Special Appeals did not hold otherwise. We assume that to be the case for the purposes of this opinion.

ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 28-29 (2010). If ambiguity is found in the text, or if the plain meaning of the text does not comport with the apparent purpose of the statute, we consult other indicia of legislative intent, including the relevant statute's legislative history, the context of the statute within the broader legislative scheme, and the rationality of competing constructions.[4] *Witte*, 369 Md. at 525-26, 801 A.2d at 165.

### A. Text of CP § 11-601(j)

The text of CP § 11-601(j) does not eliminate expressly co-participants in criminal or delinquent acts from being considered a "victim" for purposes of restitution. A voluntary participant in a criminal or delinquent activity may be harmed as a direct result of that activity. Indeed, some actions are criminalized, at least in part, for the very reason that a participant may be harmed. *See, e.g.*, Maryland Code (2002, 2012 Repl. Vol.),

---

[4] In certain of our cases, we stated that our analysis ends generally if we find the language unambiguous. *Haile v. State*, 431 Md. 448, 467, 66 A.3d 600, 611 (2013); *Stoddard v. State*, 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006). In other cases, we stated that an investigation of the apparent purpose of the statute should accompany the textual analysis, even if no ambiguity is found. *See Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 581, 103 A.3d 658, 663 (2014); *Lockshin v. Semsker*, 412 Md. 257, 275–76, 987 A.2d 18, 28–29 (2010); *Drew v. First Guar. Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003). Considering the ultimate goal of determining and applying the will of the Legislature, it is appropriate to consider other evidence of legislative intent, even if merely to confirm that our conclusion of the unambiguous meaning of the statute is correct. *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 214, 973 A.2d 233, 241 (2009) ("we may resort to legislative history to ensure that our plain language interpretation is correct").

Criminal Law Article, §§ 3-102 (prohibiting assisting a person to commit or attempt suicide), 5-601 (prohibiting possession, attempts at acquisition, or administration of a controlled dangerous substance), 10-108 (prohibiting possession and use of a tobacco product by a minor). As the Supreme Court of the United States noted in *Bond v. United States*, 134 S.Ct. 2077 (2014), however, "it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition."[5] *Id.* at 2091. The General Assembly legislates,

---

[5] The Court of Special Appeals appears to favor the principle that "when the statute does define a term, it will be accorded the specially defined meaning rather than its common meaning." *F.D.R. Srour P'ship v. Montgomery Cnty.*, 179 Md. App. 109, 129-30, 944 A.2d 1149, 1161 (2008). In *F.D.R Srour*, a builder challenged a Maryland Tax Court determination that a Montgomery County development impact tax applied to the builder's project. The statute imposing the tax, by its terms, applied "to any development for which an application for a building permit [was] filed on or after" a certain date. *Id.* at 124, 944 A.2d at 1158. Before the effective date of the impact tax, the builder received permits for and began constructing retaining walls to level the parcel and make it suitable for building, but had not received permits for constructing the structures that would occupy the parcel ultimately. *Id.* at 115, 944 A.2d at 1152-53. The builder was assessed the impact tax upon applying for building permits to construct two warehouse buildings on the property. *Id.*, at 115, 944 A.2d at 1153.

Before the Court of Special Appeals, the builder argued that retaining walls represented commencement of development for which the building permit application was filed, relying on cases in which Maryland courts acknowledged the necessity and centrality of erecting retaining walls as an initial step in paving the way for the overall development. *Id.* at 125, 944 A.2d at 1159. According to the builder, because the commencement of the retaining walls demonstrated that development had begun before the effective date of the tax, the tax was not assessed properly against the project. The intermediate appellate court, however, turned to the definition of "development" in the statute, rather than the ordinary meaning of development heralded by the builder. The relevant statute stated:

(Continued…)

7

like the United States Congress, against "the backdrop of certain unexpressed presumptions" *Id.* at 2088 (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)) (internal quotation marks omitted). In such cases, ambiguity may lurk.

The definition of "victim" contained in CP § 11-601(j), assuming for the sake of argument that it may embrace voluntary participants of criminal conduct, is at odds with the ordinary meaning of the term. In common parlance, a person who participates actively and voluntarily in criminal conduct, and is thereby injured in a highly

---

(…continued)
> Development means the carrying out of any building activity or the making of any material change in the use of any structure or land which requires issuance of a building permit and:
>> (1) Increases the number of dwelling units; or
>> (2) Increases the gross floor area of nonresidential development.

*Id.* at 125, 944 A.2d at 1158. Because the building of retaining walls did not increase the gross floor area of the non-residential development at issue in the case, the intermediate appellate court held that development had not yet begun for the purpose of the tax-authorizing statute. The Court of Special Appeals applied the statutory definition without considering the ordinary meaning of the term "development." After granting certiorari, we affirmed, also without considering the ordinary meaning of "development." *F.D.R. Srour P'ship v. Montgomery Cnty.*, 407 Md. 233, 252, 964 A.2d 650, 661 (2009).

The difference between the present case and *F.D.R. Srour* (and most cases in which the Legislature defines statutory terms) is the stark contrast between the statutory definition and the ordinary meaning of the term at issue here. The use of "development" to refer only to dwelling units or increased floor space does not create the same dissonance as using "victim" to describe a voluntary participant in criminal activity who was injured as a result. Ambiguity is not created each time the Legislature defines a term differently than the ordinary meaning of the term, but only where the two are difficult to reconcile.

foreseeable way based on the nature of the crime, is not ordinarily a "victim." Under the State's interpretation of CP § 11-601(j), however, such a person would be a "victim" for the purposes of CP § 11-603, with presumed eligibility for restitution from his or her accomplices and co-participants.[6]

We assume the General Assembly used consciously the term "victim," rather than some other term (such as "affected person," "injured party," or "harmed individual"). "[O]ur rules of statutory construction require us to interpret the statute such that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Allen v. State*, 440 Md. 643, 670-71, 103 A.3d 700, 716 (2014) (quoting *Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006)). Although it is conceivable that the term was intended to be merely a placeholder, it would be a curious one. The incongruence, it seems to us, between the ordinary meaning of "victim" and a plain meaning "take" on the definition in CP § 11-601(j) urged by the State warrants further investigation of the intent of the General Assembly.

### B.  Context of CP § 11-601(j) within the Maryland Code

Title 11 of the Criminal Procedure Article of the Maryland Code, titled "Victims and Witnesses," of which Maryland's restitution scheme is codified in Subtitle 6,

---

[6] CP § 11-603(b) states: "A victim is presumed to have a right to restitution under subsection (a) of this section if: (1) the victim or the State requests restitution; and (2) the court is presented with competent evidence of any item listed in subsection (a) of this subsection." *But see* CP § 11-605(a)(2) (restitution need not be ordered if there are "extenuating circumstances"); *see* footnote 14 below.

contains definitions of "victim" in other contexts. Consideration of these similar statutory definitions casts a shadow of doubt as to the legislative intent animating CP § 11-601(j).

Subtitle 1 of the Criminal Procedure Article, pertaining to victims' rights throughout criminal and delinquent proceedings, does not contain an overarching definition of "victim"; however, the term is defined for purposes of victim notification. Criminal Procedure § 11-104(a)(2) defines "victim" as "a person who suffers actual or threatened physical, emotional, or financial harm as a direct result of a crime or delinquent act." A law enforcement officer, District Court commissioner, or juvenile intake officer who first makes contact with the so defined "victim" is required to give him or her pamphlets summarizing the rights afforded to victims under Maryland law. *See* CP § 11-104(b); CP § 11-914(9). Prosecutors are required to: (1) provide the victim with a pamphlet highlighting post-indictment rights of victims under Maryland law; (2) inform the victim about the possibility of restitution; and (3) notify the victim of any plea agreement, judicial action, or proceeding that affects the interests of the victim. CP § 11-104(c).

Subtitle 2 of Title 11 of the Criminal Procedure Article establishes a set of pretrial rights for victims of assault and delinquent acts. For delinquent acts, the Subtitle defines "victim" as having the "meaning stated in § 3-8A-01 of the Courts [and Judicial Proceedings] Article." Criminal Procedure § 11-202(a). Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article, § 3-8A-01, in turn, defines "victim" as: "(i) [a] person who suffers direct or threatened physical, emotional, or financial harm as a result of a delinquent act; or (ii) an individual against whom an act specified in § 3-

10

8A-19.1(b) of this subtitle is committed or alleged to have been committed." Neither section makes a distinction between voluntary co-participants in the injurious crime and innocent victims.

To delineate the rights held by victims of delinquent acts, CP § 11-202(b) points also to Title 3A of the Courts and Judicial Proceedings Article. Victims are afforded a voice in the juvenile justice system. They are kept informed of the actions taken against a child, being notified, for example, that a petition alleging that the child was delinquent has been filed or that the intake officer declined to authorize a petition (with an explanation of the reasons he or she so decided). Md. Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Art., § 3-8A-10(d)(4), (g)(2). Victims are able even to participate in significant decisions about rehabilitation of the child. If the intake officer seeks to engage in "informal adjustment" of the matter, rather than judicial action, he or she must obtain first the permission of the victim. Md. Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Art., § 3-8A-10(f). The victim also may appeal an intake officer's decision not to authorize the filing of a petition with the court after receiving a complaint alleging a delinquent act. Md. Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Art., § 3-8A-10(h)(1)(i).

Subtitle 5 of Title 11 of the Criminal Procedure Article provides for certain post-sentencing procedures for defendants charged with felonies and child respondents alleged to have committed delinquent acts that would have been felonies if committed by an adult. *See* CP § 11-502. Within the Subtitle, "victim" is defined as "a person who suffers direct or threatened physical, emotional, or financial harm as a direct result of a crime or

11

delinquent act." CP § 11-501(b). No distinction is made for co-participants in the criminal or delinquent activity that caused the harm.

Criminal Procedure § 11-503 obligates the State's Attorney, at the victim's request, to provide to the victim notification of subsequent proceedings, including appeals, sentence reviews, and sentence modification hearings. In this notice, the State's Attorney must include the date, time, location, and a description of the proceeding. CP § 11-503(d). Similarly, the Department of Public Safety and Correctional Services, at the request of the victim, must notify the victim of a violent crime[7] if: (1) the convicted person has been found guilty of violating parole; (2) a warrant or subpoena has been issued for the convicted person; (3) the convicted person is being considered for a commutation, pardon, or remission of sentence; (4) the convicted person has violated mandatory supervision; and, (5) the Department will enter into a predetermined parole release agreement with the convicted person. CP § 11-505. Notification is also required at the convict or delinquent child's release from confinement. CP § 11-508.

---

[7] Violent crime is defined as abduction; first degree arson; first, second, and third degree burglary; kidnapping; manslaughter (except involuntary manslaughter); mayhem; maiming; murder; rape; robbery; carjacking; first and second degree sexual offense; use of a handgun in the commission of a felony; first degree child abuse; sexual child abuse; first degree assault; and assault with intent to murder, rape, rob, or commit a first or second degree sexual offense. *See* CP § 11-505; Maryland Code (1999, 2008 Repl. Vol.), Correctional Services Article, § 7-101(m); Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article, §14-101(a). Under a reading of Subtitle 5 analogous to the one the State offers of Subtitle 6, a joint participant committing one of these crimes, who was thereby injured, would be considered a "victim" to the same extent as the person on whom the crime was committed.

Another element of Subtitle 5 provides for victims' participation in the parole process. According to CP § 11-505(b), victims under Subtitle 5 have the rights provided for in Maryland Code (1999, 2008 Repl. Vol.), Correctional Services Article, §§ 7-801, 7-304.[8] Under these provisions, victims may provide updated written victim impact statements to the Maryland Parole Commission, make recommendations to the Commission about the advisability of releasing the inmate, request that the inmate be prohibited from contacting the victim while under supervision, and attend the parole hearing. *Id.*

Subtitles 9 and 10 of Title 11 of the Criminal Procedure Article also define facially "victim" to include voluntary participants in the crimes that caused their injuries. Both subtitles define principally "victim" as "a person who suffers direct or threatened physical, emotional, or financial harm as a direct result of a crime." *See* CP §§ 11-910(f),

---

[8] Maryland Code (1999, 2008 Repl. Vol.), Correctional Services Article, §§ 7-801, 7-304 define "victim" in a more narrow way:

> In this section, "victim" means:
> (1) an individual who suffers personal physical injury or death as a direct result of a crime;
> (2) a victim of child abuse under § 3-601 or §2-602 of the Criminal Law Article;
> (3) a victim of a violent crime;
> (4) if the victim is deceased, disabled, a minor, a designated family member or other representative of the victim.

No distinction is made regarding participants in crimes and innocent victims.

11-1001(e).[9] Subtitle 9 authorizes the Victim and Witness Protection and Relocation Program. Subtitle 10 provides guidelines for treatment of victims of crimes, victims' representatives, and witnesses. Neither subtitle excepts participants in the crimes or delinquent conduct from their definition of victim.

The definitions of "victim" in Subtitles 1, 2, 5, 9, and 10 differ slightly from the definition in Subtitle 6. In each of the subtitles, however, "victim" is defined in a way that does not exclude voluntary co-participants in the criminal or delinquent activity that

---

[9] Criminal Procedure §11-910(f) also defines as a "victim," in addition to those harmed by a "crime," a defined term in CP § 11-910(c), a person harmed by "a violation of § 21-902 of the Transportation Article." Maryland Code (1977, 2012 Repl. Vol), Transportation Article, § 21-902 prohibits driving under the influence or while intoxicated by drugs or alcohol. CP § 11-910(c) defines as a "crime":

> (1) . . . conduct that is a crime under:
>   (i) common law;
>   (ii) § 109 of the Code of Public Local Laws of
>   Caroline County;
>   (iii) § 4-103 of the Code of Public Local Laws of
>   Carrol County;
>   (iv) § 8A-1 of the Code of Public Local Laws of
>   Talbot County; or
>   (v) except as provided in paragraph (2) of this
>   subsection, the Annotated Code.
> (2) "Crime" does not include a violation of the
> Transportation Article that is not punishable by a term of
> confinement.

Criminal Procedure § 11-1001 defines "crime" as "conduct that is a crime under the law of this State or federal law." The two definitions of "victim" are the same for purposes of our analysis.

14

caused the co-participant's injury.[10] On the other hand, if the omission by the General Assembly from any distinguishment of voluntary co-participants in criminal or delinquent conduct injured by that conduct from innocent victims in the definition of "victim" for purposes of Subtitle 6 creates no room for doubt, then there would be similarly no ambiguity in like circumstances in the other subtitles considered here. Yet, when that assumption is tested, it yields more doubt that a plain meaning approach is rational regarding Subtitle 6's provisions.

We are skeptical of the proposition that the General Assembly intended voluntary co-participants of crimes who are injured as a result of the underlying misconduct to partake in the punishment and rehabilitation of their criminal cohorts. It is certainly reasonable to doubt that the General Assembly intended in Subtitle 2, in the case of two delinquent children who commit a burglary in the course of which one of the children is injured, for example, that the injured participant would be able to block the "informal adjustment" of the other participant, if that result was determined by the intake officer to be in the best interests of the child and most likely to lead to rehabilitation. It is also less than certain that, for purposes of Subtitle 5, the General Assembly intended, in the case of two adults who commit a burglary in which one of the co-participants is injured, that the

---

[10] Criminal Procedure § 11-601(j) characterizes as a victim only a person who suffered death, personal injury, or property damage or loss as a result of the crime. A person who suffers emotional injury or threatened injury is not a victim for purposes of the definition.

15

injured burglar would be permitted to participate in the parole hearings of his or her co-miscreant.

Practical issues arise if the definitions of "victim" in Title 11 were interpreted literally as the State and other courts in the present case interpret CP § 11-601(j). In *Attorney Grievance Commission v. Smith*, ___ Md. ___, ___ A.3d ___ (2015) (2015 WL 737412), we held recently that an Assistant State's Attorney violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.3, 8.4(d), and 8.4(a)[11] when he was grossly negligent in failing to communicate at all with the victim in a child sexual abuse case and her foster mother, including providing the notifications required by CP § 11-104 and failing to verify information (which proved to be false) he used to obtain a postponement of the criminal case beyond the Hicks date. *Id.*, slip op. at 17-18, 21, 24-25. As a result, we suspended indefinitely the attorney from the practice of law in Maryland, with leave to apply for reinstatement to our Bar in no sooner than sixty days. *Id.*, slip op. at 27. Although our holding that the attorney violated MLRPC 1.3 was not based solely on his failure to notify the victim and her foster mother of the proceedings, prosecutors might feel obligated, lest they run afoul of the MLRPC, to notify injured co-participants in

---

[11] Maryland Lawyers' Rule of Professional Conduct ("MLRPC") 1.3 requires an attorney to "act with reasonable diligence and promptness in representing a client." MLRPC 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." MLRPC 8.4(a) states that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another."

16

crimes as well. The practical effects of keeping criminal and delinquent participants notified of the status of the processing of their partners-in-crime are dubious.

The only subtitle of Title 11 of the Criminal Procedure Article that exempts explicitly participants in a crime from receiving the same benefits as innocent victims is the criminal victims' compensation scheme provided in Subtitle 8. The Criminal Injuries Compensation Board provides State-funded compensation for innocent victims of certain crimes. *Opert v. Criminal Injuries Comp. Bd.*, 403 Md. 587, 590, 943 A.2d 1229, 1231 (2008). Comparison between the language of the compensation scheme contained in Subtitle 8 and the restitution scheme contained in Subtitle 6 further muddies the waters surrounding the definition of "victim" in CP § 11-601(j).

In Subtitle 8, "victim" is defined more broadly than in Subtitle 6. Criminal Procedure § 11-801(f) states:

> Victim means a person:
>
> (1) who suffers physical injury or death as a result of a crime or delinquent act;
>
> (2) who suffers psychological injury as a direct result of:
>
> > (i) a fourth degree sexual offense or a delinquent act that would be a fourth degree sexual offense if committed by an adult;
> >
> > (ii) a felony or delinquent act that would be a felony if committed by an adult; or
> >
> > (iii) physical injury or death resulting from a crime or delinquent act; or
>
> (3) who suffers physical injury or death as a direct

17

result of:

> (i) trying to prevent a crime or delinquent act or an attempted crime or delinquent act from occurring in the person's presence;

> (ii) trying to apprehend an offender who had committed a crime or delinquent act in the person's presence or had committed a felony or a delinquent act that would be a felony if committed by an adult; or

> (iii) helping a law enforcement officer in the performance of the officer's duties or helping a member of a fire department who is being obstructed from performing the member's duties.

Criminal Procedure § 11-601(j) limits victims for purposes of restitution generally to only those injured as a direct result of the acts that made the conduct illegal. *State v. Stachowski*, 440 Md. 504, 513, 103 A.3d 618, 623 (2014) (citing *Goff v. State*, 387 Md. 327, 344, 875 A.2d 132, 142 (2005); *Pete v. State*, 384 Md. 47, 60-61, 862 A.2d 419, 426–27 (2004)).

Despite the broader definition of "victim" with regard to the operations of the Criminal Injuries Compensation Board, persons who engage in mutual combat or participate in a crime or delinquent act (and are injured in the course of that misconduct) are denied compensation. Criminal Procedure § 11-810(d)(3) states explicitly that "[a] claimant may not receive an award if: (i) [t]he victim initiated, consented to, provoked, or unreasonably failed to avoid a physical confrontation with the offender; or (ii) the victim was participating in a crime or delinquent act when the injury was inflicted."

The explicit exclusion of criminal and delinquent participants and mutual combatants from compensation under Subtitle 8 cuts both ways for our present purposes. On one hand, one could read it as a policy statement of the Legislature. As so considered, it would be logical for the General Assembly to disprove similarly of a court ordering restitution to be paid by one participant of a crime to a co-participant. The Legislature may have viewed excluding a co-participant from being a "victim" as so obvious that it was axiomatic and need not be spelled-out across-the-board. By the same token, the omission in CP § 11-810(d)(3) of such a distinction may suggest also that the Legislature was aware that the definition of "victim" in CP § 11-601(j) (and elsewhere in Title 11 of the Criminal Procedure Article) should be construed to include participants in the crimes or delinquent acts that caused their injury.[12] It is not difficult to imagine that the Legislature might have decided to be more parsimonious regarding distribution of State funds than those of convicted criminals or minors found to be delinquent. The fog of doubt continues to shroud our inquiry. We look next to the origins of the statute in our quest to discover the intent of the Legislature.

*C. Legislative History of CP § 11-601(j)*

---

[12] The language of the present Subtitle 8 of Title 11 of the Criminal Procedure Article comes to us from Senate Bill 4 of 1968. 1968 Maryland Laws ch. 455 (S.B. 4). As discussed below, the precursor to CP § 11-601(j) was enacted in 1989. The language now codified in Subtitle 8 was available for comparison during the legislative process during which the current Subtitle 6 was enacted.

The definition of "victim" in CP § 11-601(j) has its genesis in Senate Bill 417 of 1989. According to the Bill: "'Victim': (i) [m]eans a person who suffers personal injury, death, or property loss as a direct result of crime; and (ii) includes, in the event of a death of a victim, the victim's estate." 1989 Maryland Laws ch. 487. The Bill was codified as Maryland Code (1957, 1987 Repl. Vol.), Article 27, § 640(a)(9). Subsequent revisions of the language were not intended to change substantively the original definition.[13]

Nothing in the bill file of Senate Bill 417 illuminates for our inquiry the General Assembly's intent regarding the definition of "victim" now codified in CP § 11-601(j). According to the Floor Report of the Senate Judicial Proceedings Committee, Senate Bill 417 would, in the Committee's opinion:

(1) Authorize courts to order restitution in any case in which the Criminal Injuries Compensation Board pays benefits to the victim of a crime.

(2) Require a court to order restitution if: (a) the defendant is convicted, the court accepts a plea of nolo contendere, or the defendant receives probation before judgment; (b) restitution is requested by the victim or the State acting on

---

[13] Restitution for delinquent acts was treated formerly under separate statutes. In 1997, however, Senate Bill 311 and House Bill 768 brought both criminal and juvenile restitution under the same statute. *See* 1997 Maryland Laws chs. 311 (S.B. 311), 312 (H.B. 768). Other changes in the text include only switching the order of the recognized injuries, changing the punctuation, and specifying that property damage is included, in addition to property loss. *Compare* 1997 Maryland Laws chs. 311 (S.B. 311), 312 (H.B. 768), *with* CP § 11-601(j).

behalf of the victim; and (c) the victim faced one of the expenses for which restitution or the Criminal Compensation Board paid benefits to the victim.

(3) Require a court to hold a hearing to determine if a defendant who fails to make restitution is in contempt of court or has violated probation or parole, including determining if the defendant became intentionally impoverished to avoid paying restitution.

(4) Require the recording of restitution as a civil judgment which creates a lien on the real property of the defendant in the county of the recording.

(5) Require that the Parole Board and Patuxent Institution make payment of restitution a condition of parole or work release if restitution was ordered as part of a sentence or probation.

(6) Exempt ordered restitution from being discharged by pardon, commutation of sentence, or parole, unless a pardon explicitly states that the defendant was convicted in error.

Senate Judicial Proceedings Committee, *Floor Report* at 1-2 (1989). The summary did not mention making restitution more readily available, even though "victim" was not a defined term previously.

None of the other documents in the bill file indicate that the General Assembly intended to broaden the class of injured persons who could be considered a "victim" and thereby become eligible for restitution. The retained documents do not make it obvious that the Legislature intended to make restitution available in cases in which compensation

from the Criminal Compensation Board would be unavailable. By the same token, there is no indication that the General Assembly intended the statutes to be congruent.

## D. Policy Considerations

When "confronted with ambiguity regarding legislative intent, it is our duty to announce a rule that we are convinced is best supported by sound jurisprudential policy germane to the pursuit of legislative intent." *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 493, 914 A.2d 735, 749 (2007). "In construing a statute, 'we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.'" *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 182, 909 A.2d 694, 700 (2006) (quoting *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994)); *accord Stickley v. State Farm Fire & Cas. Co.*, 431 Md. 347, 359, 65 A.3d 141, 148 (2013). Consideration of the practical outcomes of the competing understanding of "victim" in CP § 11-601(j) supports, in our view, Petitioner's position that the Legislature did not intend restitution to be available for a voluntary co-participant in the criminal conduct that led to that person's injury.

The interpretation of CP § 11-601(j) proposed by the State would confer on voluntary co-participants in criminal and delinquent conduct a presumption of a right to restitution for injuries resulting from their offenses. *See supra* note 6. If one participant of the mutual criminal endeavor was injured in the course of a criminal or delinquent act, the other participant or participants could be ordered to pay restitution (whether in full or based on a sort of comparative fault basis, as was the case here) for the injuries. Using courts to this end seems to us absurd in concept.

22

The State argues implicitly that, because restitution is discretionary under Maryland's statutory regime, courts would not be required to impose restitution in a way that places courts in an inappropriate role or facilitates criminal undertakings.[14] This misses the mark. Even if there are some conceivable rare situations in which restitution may be ordered in favor of a person who was a co-participant in a crime that caused his or her injury,[15] we must analyze the case before us. Ordering restitution in the present

---

[14] Criminal Procedure § 11-605 states:

> (a) *In general.* – A court need not issue a judgment of restitution . . . if the court finds:
> > (1) that the restitution obligor does not have the ability to pay the judgment of restitution; or
> > (2) that there are extenuating circumstances that make a judgment of restitution inappropriate.
> (b) *Refusal of restitution.* – A court that refuses to order restitution that is requested . . . shall state on the record the reasons.

According to the State, the term "extenuating circumstances" affords trial courts discretion to deny restitution to any victim. One possible extenuating circumstance considered by the court, in the State's view, might be that the "victim" was a co-participant in the crime or delinquent act. Petitioner, relying on the legislative history of the provision, asserts that participation in the crime or delinquent act is not one of the factors that the Legislature intended for the court to consider.

[15] *United States v. Sanga*, 967 F.2d 1332 (9th Cir. 1992), discussed *infra* Part E., held that, for purposes of a federal restitution statute, restitution was appropriate for a co-conspirator in a scheme to smuggle aliens into the United States and illegally obtain their citizenship. *Id.* at 1334-35. After being smuggled into the United States, the victim's foreign passport was confiscated by the defendant, the victim was put to work as a live-in maid for the defendant at a substandard wage, and was coerced into having sex with the defendant in exchange for forged documents that would allow the victim to seek employment outside of the defendant's home. *Id.* According to the U.S. Court of Appeals

(Continued…)

case, and other cases in which the person for whom restitution is ordered was a voluntary and equal participant throughout the crime or delinquent act that caused the injury, would be inappropriate.

The rehabilitative aims of restitution in juvenile cases, *Robey v. State*, 397 Md. 449, 458, 918 A.2d 499, 505 (2007), as well as the accompanying retributive and compensative aims present in criminal orders of restitution, *Stachowski*, 440 Md. at 512, 103 A.3d at 623, may still be achieved even if courts do not have the authority to order restitution to co-participants of the crime causing injury. In the present case, Petitioner was accused of both second degree assault of Dylan P. and affray. Had there been a sufficient factual proffer or other development of the factual record in support of the second degree assault charge, the State could have sought Petitioner's agreement to pay restitution for the assault as part of the plea negotiations. The trial court would then have authority to order restitution or require payment as a condition of probation. *See Stachowski*, 440 Md. at 516, 103 A.3d at 625.

In the present case, however, Petitioner was found involved only in the delinquent act of affray and did not agree to pay restitution for the assault or affray for which he was accused. By its definition, affray requires at least two voluntary participants. *Hickman v.*

---

(…continued)
for the Ninth Circuit, the victim had become "the object of, rather than a participant in the criminal goals of the conspirators." *Id.* at 1335. Restitution to participants in crimes or delinquent acts under Maryland's restitution scheme may be appropriate in analogous situations in which the purported victim's participation has ended at a material point in the ongoing criminal enterprise.

*State*, 193 Md. App. 238, 248, 996 A.2d 974, 980 (2010). In the State's factual proffer, there was no indication that Dylan P. was anything but a willing and equal participant in the affray until the two dispositive punches were landed by Tyrell A.[16]

The State's concern that unsubstantiated claims of criminal or delinquent participation could form a basis for a denial of restitution is inapposite to the present case. The trial judge, by finding Petitioner involved in the affray and Dylan P. 50% responsible for what happened to him, made an affirmative factual determination that Dylan P. was a co-participant. There is nothing in this record to suggest otherwise.

### E. *"Victim" under the Mandatory Victims Restitution Act of 1996*

Federal courts have held that the Mandatory Victims Restitution Act of 1996 ("MVRA"), which requires restitution for certain offenses, does not authorize restitution to co-participants in criminal endeavors.[17] The federal statute defines "victim" in a similar fashion to CP § 11-601(j). According to 18 U.S.C. § 3663A(2):

---

[16] The Maryland Crime Victims' Resource Center, as *amicus curiae*, questions the voluntariness of Dylan P.'s participation in the fist-fight with Petitioner. The State's limited factual proffer, the elements of affray, and the trial judge's determination that Dylan P. was responsible equally for his injuries, however, are clear. In a situation where an injured person participated unwillingly in a crime or delinquent act, the trial court may have discretion to order restitution.

[17] Because of the similarities between the Mandatory Victims Restitution Act of 1996 ("MVRA") and the Victim and Witness Protection Act of 1982 ("VWPA"), the analysis of whether participants in crimes can be "victims" under the statutes are the same. *United States v. Lazarenko*, 624 F.3d 1247, 1249 n.2 (9th Cir. 2010). There exist, however, other federal restitution statutes. *Id.* at 1248 n.1.

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

Like the Maryland statute, the MVRA, on its face, does not except clearly co-participants in crimes from being "victims" and thereby be eligible for restitution ordered in their favor. Interpretation of the federal statute is persuasive for interpretation of Maryland's restitution statute.[18] Federal courts have found that the practical outcomes of

---

[18] The State, noting the mandatory nature of the MVRA and contrasting that with the discretion invested in trial judges under Maryland's restitution statute, argues that the federal cases should not be persuasive. The mandatory MVRA and discretionary VWPA, however, are treated the same by the Ninth Circuit Court of Appeals in *Lazarenko*. *Id.* at 1249 n.2.

The majority of the panel of the Court of Special Appeals here found the federal cases unpersuasive. As the majority noted, the purpose of restitution under the MVRA is not to punish or rehabilitate the defendant, but rather restore the losses caused by the crime. *See United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010). Restitution under Maryland's regime aims to punish and rehabilitate the criminal or delinquent child, as well as compensate the victim. *State v. Stachowski*, 440 Md. 504, 512, 103 A.3d 618, 623 (2014). Although this distinction diminishes somewhat the persuasive force of the federal cases, it does not erase it entirely. The federal courts' reasoning regarding the proper role of courts and their ability to inspire public confidence remains appealing.

ordering restitution to participants in crimes makes it unlikely that restitution was intended for participants in the crimes causing injury.

In *United States v. Reifler*, 446 F.3d 65, 70 (2d Cir. 2006), one of the defendants, Lionel Reifler, pleaded guilty to one count of conspiracy to commit securities fraud, wire fraud, and commercial bribery, and two counts of commercial bribery. As a result, Reifler was sentenced to a term of imprisonment and ordered to pay $2 million in restitution to the victims of the conspiracy. *Id.* Among those to whom Reifler was ordered to pay restitution were other co-conspirators in the planned fraud. *Id.* at 127. On appeal, the U.S. Court of Appeals for the Sixth Circuit vacated the restitution order and remanded the case to the trial court for further proceedings, holding that co-conspirators could not be victims under the MVRA. *Id.* at 127, 139. Although no party raised the issue of restitution ordered to participants in the crime, the panel of the federal Court of Appeals noted that

> an order entered under the MVRA that has the effect of treating coconspirators as "victims," and thereby requires "restitutionary" payments to the perpetrators of the offense of conviction, contains an error so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may, and do, deal with it *sua sponte*.

*Id.* at 127.

In *United States v. Lazarenko*, 624 F.3d 1247 (9th Cir. 2010), a panel of the U.S. Court of Appeals for the Ninth Circuit held that restitution cannot be ordered between co-

conspirators, absent exceptional circumstances. *Id.* at 1249.[19] Pavel Lazarenko was convicted of money laundering and conspiracy to commit money laundering at a time when he was Prime Minister of Ukraine. *Id.* The federal trial court ordered Lazarenko to pay more than $19 million in restitution to his co-conspirator, whom the trial court found was a victim under the MVRA. *Id.* A jury in the main criminal case found that Lazarenko obtained money illegally from Peter Kiritchenko as a result of extortion, but that Kiritchenko was an active party in the conspiracy. *Id.* at 1250. The U.S. Court of Appeals for the Ninth Circuit reasoned that because Kiritchenko was a major part of the conspiracy in which he participated willingly and made no attempt to withdraw—and from which he profited greatly—no exceptional circumstances were present. The trial court's order mandating restitution was vacated.[20] *Id.* at 1252.

The *Lazarenko* court agreed with the Second Circuit Court of Appeals decision in *Reifler*, noting that ordering restitution to a co-conspirator was a "fundamental error" and harmed the public reputation of the courts. *Id.* at 1252. Even though "[u]nder the plain text of the MVRA . . . co-conspirators have just as much right to restitution as do innocent victims[,]" *id.* at 1250, the Court reasoned that Congress could not have

---

[19] *Lazarenko* involved only the legality of the order of restitution. A mountain of litigation arose from the underlying criminal conduct. *See* 624 F.3d. at 1249 (describing the appeals of the criminal trial and related forfeiture litigation).

[20] The Court of Appeals for the Ninth Circuit noted its agreement with the Court of Appeals for the Second Circuit that "an order of restitution to a co-conspirator is a 'fundamental' error that 'adversely reflects on the public reputation of the judicial proceedings.'" *Id.* at 1252 (quoting *U.S. v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006)).

intended for federal courts to "be involved in redistributing funds among wholly guilty co-conspirators . . . [,]" *id.* at 1251.

*United States v. Sanga*, 967 F.2d 1332 (9th Cir. 1992), discussed in *Lazarenko*, demonstrates the kind of reasoning and exceptional circumstances that might allow restitution among co-conspirators and participants of the crime causing injury. In *Sanga*, the defendant, Efren Sanga, pleaded guilty to conspiracy to smuggle aliens into the United States and obtaining unlawfully citizenship for them. *Id.* at 1333. As a result, Sanga was ordered to pay restitution to Annie Quinlob, a live-in maid he smuggled into the United States from the Philippines. Sanga argued that Quinlob was not a victim for purposes of the Victim and Witness Protection Act of 1982 because she was a willing participant in the conspiracy to smuggle her into the United States.[21] *Id.* 1333-34.

Under the circumstances of *Sanga*, the Court of Appeals for the Ninth Circuit found that restitution was appropriate. Quinlob, after arriving to the United States, sought to return to the Philippines. *Id.* at 1334. Sanga, however, took Quinlob's passport and

---

[21] The VWPA defines victim similarly to the MVRA. Codified in 18 U.S.C. § 3663, the VWPA states:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

return airplane ticket, and threatened her life if she left his employment. *Id.* Sanga and his wife kept Quinlob as a servant, paying her only $150 a month for working fourteen hours a day, seven days a week. *Id.* at 1334. After working as Sanga's maid for two years, Quinlob sought employment outside Sanga's home. *Id.* at 1335. She was forced to have sex with Sanga in exchange for a false Guam identification card. *Id.* The federal appellate court noted that "[a]ny criminal complicity in the conspiracy which Quinlob might bear stopped at the point at which she became the object of, rather than a participant in[,] the criminal goals of the conspirators." *Id.* at 1335.

The Court in *Lazarenko* distinguished *Sanga* on multiple grounds. According to the Court:

> Our decision in *Sanga* did not hinge solely on Quinlob's non-participation in the victimizing behavior. Our analysis was informed by the fact that Quinlob was not named as a co-conspirator in the indictment; that she had a very minor role in the conspiracy; and that her persecution began after the completion of her small part of the conspiracy. Although she was technically a co-conspirator, her very small role was unconnected to the overall conspiracy; indeed, had she known the full extent of the conspiracy—that she would be forced to be a slave and rape victim—she would not have entered the conspiracy.

> Here, by contrast, the government named Kiritchenko as the primary co-conspirator in the indictment. Kiritchenko willingly participated in most of the conspiracy, unlike in *Sanga*. Indeed, Kiritchenko knowingly participated in the conspiracy even though he knew that his own past "victimization" was the basis of the laundered money, unlike in Sanga, where Quinlob immediately sought to withdraw from the conspiracy and return to the Philippines once she discovered the true purpose of the conspiracy. And Kiritchenko, unlike Quinlob, profited greatly from the overall criminal enterprise. In short, Kiritchenko's deep and willing

30

> complicity in the heart of the conspiracy, following his initial victimization, sharply distinguishes this case from *Sanga*.

*Lazarenko*, 624 F.3d at 1252 (citations omitted). It appears to us that the thrust of the federal appellate court's reasoning revolved around Quinlob's and Kiritchenko's relative levels of voluntary participation in the criminal conduct for which restitution was ordered. Congress could have intended plausibly restitution ordered to someone in Quinlob's situation, and doing so would not harm the public confidence in the courts. Given the depth of Kiritchenko's participation in the relevant conspiracy, however, it was unlikely that Congress intended federal courts to order payment of restitution under those circumstances. The concerns and approach highlighted by these federal cases are persuasive to us.

CONCLUSION

The dissonance between the ordinary understanding of the term "victim" and its specific definition in CP § 11-601(j) of Maryland's restitution statute creates ambiguity. The State's interpretation would create a presumption that criminal adventurers may be entitled to an order ameliorating the injurious consequences of their misdeeds through restitution from their co-participants. *See supra* note 6.. It strikes us as unlikely that the General Assembly intended such an arrangement. Absent clear legislative intent to do so, we will not give a statute an unreasonable interpretation. We therefore hold that Title 11, Subtitle 6 of the Criminal Procedure Article of the Maryland Code does not authorize trial courts generally to order restitution in favor of a person who is a voluntary and

31

willing participant in the crime or delinquent activity that caused his or her injury, absent exceptional circumstances. *See* the federal cases *supra*.

The record of the present case indicates that Dylan P. was a voluntary co-participant. The factual proffer by the State's Attorney, the statements of Petitioner, and the comments by the trial judge all indicate that Dylan P. fought willingly with Petitioner. Further, the voluntary nature of the fight is a necessary element in affray for which Petitioner was found involved. No exceptional circumstances of the kind discussed in the federal cases exist on the record of the present case. We therefore direct vacation of the requirement of Petitioner's probation that he pay restitution to Dylan P.

> JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY TO VACATE THE CONDITION OF THE ORDER OF PROBATION THAT CALLS FOR RESTITUTION TO BE PAID TO DYLAN P., CONSISTENT WITH THIS OPINION. MONTGOMERY COUNTY TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.